## DE JONGE *v.* OREGON.

No. 123.   Argued December 9, 1936.—Decided January 4, 1937.

354

*Mr. Osmond K. Fraenkel,* with whom *Mr. Gus J. Solomon* was on the brief, for appellant.

*Mr. Maurice E. Tarshis,* Deputy District Attorney, Multnomah County, with whom *Mr. James R. Bain,* District Attorney, and *Mr. Willis S. Moore,* Assistant Attorney General of Oregon, were on the brief, for appellee.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Appellant, Dirk De Jonge, was indicted in Multnomah County, Oregon, for violation of the Criminal Syndicalism Law of that State.[1] The Act, which we set forth in

[1] Oregon Code, 1930, §§ 14-3110-3112—as amended by chapter 459, Oregon Laws, 1933:

"Section 14-3110. Criminal syndicalism hereby is defined to be the doctrine which advocates crime, physical violence, sabotage, or any unlawful acts or methods as a means of accomplishing or effecting industrial or political change or revolution.

"Section 14-3111. Sabotage hereby is defined to be intentional and unlawful damage, injury or destruction of real or personal property.

"Section 14-3112. Any person who, by word of mouth or writing, advocates or teaches the doctrine of criminal syndicalism, or sabotage, or who prints, publishes, edits, issues or knowingly circulates, sells, distributes or publicly displays any books, pamphlets, paper, hand-bill, poster, document or written or printed matter in any form whatsoever, containing matter advocating criminal syndicalism, or sabotage, or who shall organize or help to organize, or solicit or accept any person to become a member of any society or assemblage of persons which teaches or advocates the doctrine of criminal syndicalism, or sabotage, or any person who shall orally or by writing or by printed matter call together or who shall distribute or circulate

the margin, defines "criminal syndicalism" as "the doctrine which advocates crime, physical violence, sabotage or any unlawful acts or methods as a means of accomplishing or effecting industrial or political change or revolution." With this preliminary definition the Act proceeds to describe a number of offenses, embracing the teaching of criminal syndicalism, the printing or distribution of books, pamphlets, etc., advocating that doctrine, the organization of a society or assemblage which advocates it, and presiding at or assisting in conducting a meeting of such an organization, society or group. The prohibited acts are made felonies, punishable by imprisonment for not less than one year nor more than ten years, or by a fine of not more than $1,000, or by both.

We are concerned with but one of the described offenses and with the validity of the statute in this particular application. The charge is that appellant assisted in the conduct of a meeting which was called under the auspices of the Communist Party, an organization advocating criminal syndicalism. The defense was that the meeting was public and orderly and was held for a lawful purpose; that while it was held under the auspices of the Communist Party, neither criminal syndicalism nor any unlawful conduct was taught or advocated at the meeting either by appellant or by others. Appellant moved for a direction of acquittal, contending that the statute as applied to him, for merely assisting at a meeting called by the Communist Party at which nothing unlawful was done or advocated, violated the due process clause of the

---

written or printed matter calling together or who shall preside at or conduct or assist in conducting any assemblage of persons, or any organization, or any society, or any group which teaches or advocates the doctrine of criminal syndicalism or sabotage is guilty of a felony and, upon conviction thereof, shall be punished by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years, or by a fine of not more than $1,000, or by both such imprisonment and fine."

Fourteenth Amendment of the Constitution of the United States.

This contention was overruled. Appellant was found guilty as charged and was sentenced to imprisonment for seven years. The judgment was affirmed by the Supreme Court of the State, which considered the constitutional question and sustained the statute as thus applied. 152 Ore. 315; 51 P. (2d) 674. The case comes here on appeal.

The record does not present the evidence adduced at the trial. The parties have substituted a stipulation of facts, which was made and filed after the decision of the Supreme Court of the State and after the Chief Justice of that court had allowed the appeal and had directed transmission here of a certified transcript of the record. We do not approve of that practice, where it does not appear that the stipulation has received the approval of the court, as we think that adherence to our rule as to the preparation of records is important for the protection of the court whose decision is under review as well as of this Court. See Rule 10. But as the question presented in this instance does not turn upon an appreciation of the facts on any disputed point, we turn to the merits.

The stipulation, after setting forth the charging part of the indictment, recites in substance the following: That on July 27, 1934, there was held in Portland, a meeting which had been advertised by handbills issued by the Portland section of the Communist Party; that the number of persons in attendance was variously estimated at from 150 to 300; that some of those present, who were members of the Communist Party, estimated that not to exceed ten to fifteen per cent. of those in attendance were such members; that the meeting was open to the public without charge and no questions were asked of those entering, with respect to their relation to the Communist Party; that the notice of the meeting advertised it as a

protest against illegal raids on workers' halls and homes and against the shooting of striking longshoremen by Portland police; that the chairman stated that it was a meeting held by the Communist Party; that the first speaker dwelt on the activities of the Young Communist League; that the defendant De Jonge, the second speaker, was a member of the Communist Party and went to the meeting to speak in its name; that in his talk he protested against conditions in the county jail, the action of city police in relation to the maritime strike then in progress in Portland and numerous other matters; that he discussed the reason for the raids on the Communist headquarters and workers' halls and offices; that he told the workers that these attacks were due to efforts on the part of the steamship companies and stevedoring companies to break the maritime longshoremen's and seamen's strike; that they hoped to break the strike by pitting the longshoremen and seamen against the Communist movement; that there was also testimony to the effect that defendant asked those present to do more work in obtaining members for the Communist Party and requested all to be at the meeting of the party to be held in Portland on the following evening and to bring their friends to show their defiance to local police authority and to assist them in their revolutionary tactics; that there was also testimony that defendant urged the purchase of certain communist literature which was sold at the meeting; that while the meeting was still in progress it was raided by the police; that the meeting was conducted in an orderly manner; that defendant and several others who were actively conducting the meeting were arrested by the police and that on searching the hall the police found a quantity of communist literature.

The stipulation then set forth various extracts from the literature of the Communist Party to show its advocacy of criminal syndicalism. The stipulation does not disclose

any activity by the defendant as a basis for his prosecution other than his participation in the meeting in question. Nor does the stipulation show that the communist literature distributed at the meeting contained any advocacy of criminal syndicalism or of any unlawful conduct. It was admitted by the Attorney General of the State in his argument at the bar of this Court that the literature distributed in the meeting was not of that sort and that the extracts contained in the stipulation were taken from communist literature found elsewhere. Its introduction in evidence was for the purpose of showing that the Communist Party as such did advocate the doctrine of criminal syndicalism, a fact which is not disputed on this appeal.

While the stipulation of facts is but a condensed statement, still much of it is irrelevant in the light of the particular charge of the indictment as construed by the Supreme Court. The indictment charged as follows:

"The said Dirk De Jonge, Don Cluster, Edward R. Denny and Earl Stewart on the 27th day of July, A. D., 1934, in the county of Multnomah and State of Oregon, then and there being, did then and there unlawfully and feloniously preside at, conduct and assist in conducting an assemblage of persons, organization, society and group, to-wit: The Communist Party, a more particular description of which said assemblage of persons, organization, society and group is to this grand jury unknown, which said assemblage of persons, organization, society and group did then and there unlawfully and feloniously teach and advocate the doctrine of criminal syndicalism and sabotage, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

On the theory that this was a charge that criminal syndicalism and sabotage were advocated at the meeting in question, defendant moved for acquittal insisting that the evidence was insufficient to warrant his conviction.

The trial court denied his motion and error in this respect was assigned on appeal. The Supreme Court of the State put aside that contention by ruling that the indictment did not charge that criminal syndicalism or sabotage was advocated at the meeting described in the evidence, either by defendant or by anyone else. The words of the indictment that "said assemblage of persons, organization, society and group did then and there unlawfully and feloniously teach and advocate the doctrine of criminal syndicalism and sabotage," referred not to the meeting in question, or to anything then and there said or done by defendant or others, but to the advocacy of criminal syndicalism and sabotage by the Communist Party in Multnomah County. The ruling of the state court upon this point was precise. The court said (152 Ore. p. 330):

"Turning now to the grounds for a directed verdict set forth in defendant's motion therefor, we note that he asserts and argues that the indictment charges the assemblage at which he spoke with unlawfully and feloniously teaching and advocating the doctrine of criminal syndicalism and sabotage, and elsewhere in the same motion he contends that the indictment charges the defendant with unlawfully and feloniously teaching and advocating said doctrine at said meeting. The indictment does not, however, charge the defendant, nor the assemblage at which he spoke, with teaching or advocating at said meeting at 68 Southwest Alder street, in the city of Portland, the doctrine of criminal syndicalism or sabotage. What the indictment does charge, in plain and concise language, is. that the defendant presided at, conducted and assisted in conducting an assemblage of persons, organization, society and group, to-wit, the Communist party, which said assemblage of persons, organization, society and group was unlawfully teaching and advocating in Multnomah county the doctrine of criminal syndicalism and sabotage."

In this view, lack of sufficient evidence as to illegal advocacy or action at the meeting became immaterial.

Having limited the charge to defendant's participation in a meeting called by the Communist Party, the state court sustained the conviction upon that basis regardless of what was said or done at the meeting.

We must take the indictment as thus construed. Conviction upon a charge not made would be sheer denial of due process. It thus appears that, while defendant was a member of the Communist Party, he was not indicted for participating in its organization, or for joining it, or for soliciting members or for distributing its literature. He was not charged with teaching or advocating criminal syndicalism or sabotage or any unlawful acts, either at the meeting or elsewhere. He was accordingly deprived of the benefit of evidence as to the orderly and lawful conduct of the meeting and that it was not called or used for the advocacy of criminal syndicalism or sabotage or any unlawful action. His sole offense as charged, and for which he was convicted and sentenced to imprisonment for seven years, was that he had assisted in the conduct of a public meeting, albeit otherwise lawful, which was held under the auspices of the Communist Party.

The broad reach of the statute as thus applied is plain. While defendant was a member of the Communist Party, that membership was not necessary to conviction on such a charge. A like fate might have attended any speaker, although not a member, who "assisted in the conduct" of the meeting. However innocuous the object of the meeting, however lawful the subjects and tenor of the addresses, however reasonable and timely the discussion, all those assisting in the conduct of the meeting would be subject to imprisonment as felons if the meeting were held by the Communist Party. This manifest result was brought out sharply at this bar by the concessions which the Attorney General made, and could not avoid, in the light of the decision of the state court.

Thus if the Communist Party had called a public meeting in Portland to discuss the tariff, or the foreign policy of the Government, or taxation, or relief, or candidacies for the offices of President, members of Congress, Governor, or state legislators, every speaker who assisted in the conduct of the meeting would be equally guilty with the defendant in this case, upon the charge as here defined and sustained. The list of illustrations might be indefinitely extended to every variety of meetings under the auspices of the Communist Party although held for the discussion of political issues or to adopt protests and pass resolutions of an entirely innocent and proper character.

While the States are entitled to protect themselves from the abuse of the privileges of our institutions through an attempted substitution of force and violence in the place of peaceful political action in order to effect revolutionary changes in government, none of our decisions go to the length of sustaining such a curtailment of the right of free speech and assembly as the Oregon statute demands in its present application. In *Gitlow* v. *New York,* 268 U. S. 652, under the New York statute defining criminal anarchy, the defendant was found to be responsible for a "manifesto" advocating the overthrow of the government by violence and unlawful means. *Id.,* pp. 656, 662, 663. In *Whitney* v. *California,* 274 U. S. 357, under the California statute relating to criminal syndicalism, the defendant was found guilty of wilfully and deliberately assisting in the forming of an organization for the purpose of carrying on a revolutionary class struggle by criminal methods. The defendant was convicted of participation in what amounted to a conspiracy to commit serious crimes. *Id.,* pp. 363, 364, 367, 379. The case of *Burns* v. *United States,* 274 U. S. 328, involved a similar ruling under the California statute as

extended to the Yosemite National Park. *Id.,* pp. 330, 331. On the other hand, in *Fiske* v. *Kansas,* 274 U. S. 380, the criminal syndicalism act of that State was held to have been applied unconstitutionally and the judgment of conviction was reversed, where it was not shown that unlawful methods had been advocated. *Id.,* p. 387. See, also, *Stromberg* v. *California,* 283 U. S. 359.

Freedom of speech and of the press are fundamental rights which are safeguarded by the due process clause of the Fourteenth Amendment of the Federal Constitution. *Gitlow* v. *New York, supra,* p. 666; *Stromberg* v. *California, supra,* p. 368; *Near* v. *Minnesota,* 283 U. S. 697, 707; *Grosjean* v. *American Press Co.,* 297 U. S. 233, 243, 244. The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental. As this Court said in *United States* v. *Cruikshank,* 92 U. S. 542, 552: "The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." The First Amendment of the Federal Constitution expressly guarantees that right against abridgment by Congress. But explicit mention there does not argue exclusion elsewhere. For the right is one that cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of all civil and political institutions,—principles which the Fourteenth Amendment embodies in the general terms of its due process clause. *Hebert* v. *Louisiana,* 272 U. S. 312, 316; *Powell* v. *Alabama,* 287 U. S. 45, 67; *Grosjean* v. *American Press Co., supra.*

These rights may be abused by using speech or press or assembly in order to incite to violence and crime. The people through their legislatures may protect themselves against that abuse. But the legislative intervention can find constitutional justification only by dealing with the

abuse. The rights themselves must not be curtailed. The greater the importance of safeguarding the community from incitements to the overthrow of our institutions by force and violence, the more imperative is the need to preserve inviolate the constitutional rights of free speech, free press and free assembly in order to maintain the opportunity for free political discussion, to the end that government may be responsive to the will of the people and that changes, if desired, may be obtained by peaceful means. Therein lies the security of the Republic, the very foundation of constitutional government.

It follows from these considerations that, consistently with the Federal Constitution, peaceable assembly for lawful discussion cannot be made a crime. The holding of meetings for peaceable political action cannot be proscribed. Those who assist in the conduct of such meetings cannot be branded as criminals on that score. The question, if the rights of free speech and peaceable assembly are to be preserved, is not as to the auspices under which the meeting is held but as to its purpose; not as to the relations of the speakers, but whether their utterances transcend the bounds of the freedom of speech which the Constitution protects. If the persons assembling have committed crimes elsewhere, if they have formed or are engaged in a conspiracy against the public peace and order, they may be prosecuted for their conspiracy or other violation of valid laws. But it is a different matter when the State, instead of prosecuting them for such offenses, seizes upon mere participation in a peaceable assembly and a lawful public discussion as the basis for a criminal charge.

We are not called upon to review the findings of the state court as to the objectives of the Communist Party. Notwithstanding those objectives, the defendant still enjoyed his personal right of free speech and to take part in a peaceable assembly having a lawful purpose, although

called by that Party. The defendant was none the less entitled to discuss the public issues of the day and thus in a lawful manner, without incitement to violence or crime, to seek redress of alleged grievances. That was of the essence of his guaranteed personal liberty.

We hold that the Oregon statute as applied to the particular charge as defined by the state court is repugnant to the due process clause of the Fourteenth Amendment. The judgment of conviction is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.