## FLEISCHMAN v. UNITED STATES.

### No. 9852.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 7, 1949.

Decided April 8, 1949.

PRETTYMAN, Circuit Judge, dissenting in part.

———◆———

Mr. Benedict Wolf, of New York City, of the bar of the State of New York, pro hac vice, by special leave of Court, and O. John Rogge, of Washington, D. C., for appellant.

Mr. Charles B. Murray, Asst. U. S. Atty., of Washington, D. C., with whom Mr. George Morris Fay, U. S. Atty., of Washington, D. C., was on the brief, for appellee. Mr. John D. Lane, Asst. U. S. Atty., of Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, PRETTYMAN, and PROCTOR, Circuit Judges.

EDGERTON, Circuit Judge.

Appellant has been convicted of willfully making default before the Committee on Un-American Activities of the House of Representatives, after being summoned to produce before it the records of the Joint Anti-Fascist Refugee Committee. A single indictment charged this appellant and the defendants in the Barsky case.[1] Appellant was tried separately.

The indictment alleged the defendants "were summoned to produce before the Congressional Committee on April 4, 1946, records * * *" and "appeared before the Congressional Committee" on that day "but failed to produce the records called for in the subpoena, as they had power

---

[1] Barsky v. United States, 83 U.S.App. D.C. 127, 167 F.2d 241, certiorari denied, 334 U.S. 843, 68 S.Ct. 1511; petition for rehearing pending.

to do, and thereby wilfully made default." The proof showed that this appellant appeared before some members of the Congressional Committee on April 4 and did not produce the records but testified she could not produce them because they were not in her possession or control.

■■■ There is, by definition, no meeting of a committee unless a quorum is present. A quorum of the Congressional Committee was five members. Whether five members were or were not present was a disputed question of fact. It was a material question, assuming there was evidence that (contrary to her own testimony) the records were in appellant's control.[2] On that assumption, therefore, the question whether a quorum was present should have been submitted to the jury. But the court instructed the jury, over objection, that "as a matter of law * * * the members of the committee before whom the defendants appeared, pursuant to the subpoenas served on them, constituted a sufficient quorum to carry on the investigation." We think this was error. Even if the evidence that a quorum was present had been conclusive the instruction would have been erroneous. In a criminal case "a judge may not direct a verdict of guilty no matter how conclusive the evidence"[3] nor direct the jury to find a material fact against the defendant.[4]

■■ A person summoned to testify before a committee cannot commit perjury unless the committee meets. This is conceded. Although the government concedes also that perjury and willful default are analogous in this respect,[5] the dissenting opinion suggests that if a person summoned to produce records before a committee expresses unwillingness to do so he "willfully makes default" whether the committee meets or not. We think the quoted words cannot bear that construction.

The applicable statute is directed against "every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before * * * any committee of either House of Congress, willfully makes default".[6] "Default" is, of course, failure to comply with the summons. Appellant, summoned to produce records before the Congressional Committee, could not comply with the summons unless the committee met. Production before some members of the committee, absent a quorum, would not be a compliance. So much is clear and undisputed. Unless the appellant could comply with the summons she could not be guilty of willfully making default. Failure to · do what cannot be done is not a willful crime. Neither is failure, however expressed, to desire and attempt it. The appellant could not be guilty of anything more than this unless the Congressional Committee met.

Judge Proctor concurs in so much of this opinion. The judgment is therefore reversed and the case remanded. Judge Proctor does not concur in the rest of this opinion and there I speak only for myself.

If it was impossible to produce the records before the Congressional Committee, which it plainly was if the Committee did not meet, appellant's supposed unwillingness to produce them is immaterial because it had no practical effect. A will or desire or intention that has no practical consequences has no legal consequences. Whatever a defendant's intention may be, and however emphatically he may announce it, he commits no crime unless he is guilty of some act or omission that causes a prohibited event. The statute does not prohibit willfully expressing a desire or intention to make default. It prohibits only willfully making default. Our system of law does not take the will for the deed. To paraphrase what the Supreme Court

---

[2] Judge Proctor agrees with Judge Prettyman that there was such evidence. I think there was none. The question is discussed at the end of this opinion.

[3] United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 408, 67 S.Ct. 775, 782, 91 L.Ed. 973.

[4] Konda v. United States, 7 Cir., 166 F. 91, 22 L.R.A.,N.S., 304.

[5] The government urges that a quorum of the Committee was present.

[6] 2 U.S.C.A. § 192, R.S. § 102, as amended, 52 Stat. 942.

said when we treated another statute as dispensing with another fundamental principle, "We cannot but think that if Congress had intended to make such a drastic departure from the traditions of [our law], an unequivocal statement of its purpose would have been made."[7]

Since a bad intention and a prohibited event do not make a crime, proof of them does not make a case. There is no presumption that if a defendant desired a thing, and it happened, he did it. If it is proved in a murder trial that the defendant expressed an intention to kill a man, and that the man was killed, the government must still convince the jury that the defendant killed him. If it was proved that this appellant expressed an intention not to comply with the summons, and that the summons was not complied with, the government must still convince the jury that noncompliance was caused by some act or omission of the appellant.

The assumption that the appellant had control of the records and refused to produce them, or expressed unwillingness to do so or an intention not to do so, has been shown to be immaterial unless the Congressional Committee met. In my opinion the assumption is also erroneous. Appellant testified without contradiction that she could not produce the records because they were not in her possession or control. She refused to express either willingness or unwillingness that they be produced.[8] Even this refusal did not occur until she was questioned by members of the Congressional Committee on April 4. The records were in possession of one Bryan, subject to control by an Executive Board of about 18 members of whom appellant was one. Long before April 4 Bryan, directed by other members of the Board but not by the appellant, had determined not to produce the records. There is no evidence that appellant ratified or approved the action of the other members of the Board. The government says "In taking part in a combined action to withhold records from a Congressional Committee the appellant acted at her own peril." But I have not been able to find any evidence, and no evidence has been pointed out, that the appellant took part in a combined action to withhold records. It has been suggested that she might have asked the Board, or Bryan, to produce the records. But there is no evidence that if she had asked them they would have complied. There is no evidence that the nonproduction of the records in the committeeroom resulted either from anything the appellant did or from anything she omitted to do. This makes it quite immaterial whether or not the Congressional Committee met. The court should have directed a verdict of acquittal. The DeJonge, Herndon and Schneiderman cases,[9] holding that things said or done by an organization cannot be attributed to a member merely because of his membership, are directly in point. Guilt, like belief, is "personal and not a matter of mere association".[10]

We need not consider the questions raised in the Barsky case[11] or whether government employees were qualified jurors.

Reversed.

[7] Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 83 L.Ed. 754.

[8] "The Chairman: Mrs. Fleischman; I am going to ask you now for your personal permission. 1 am requesting you personally to permit this committee of Congress to have access to those books. Will you give it to us or not? So far as you are able to do, will you give it to us?

"Mrs. Fleischman: That is expressing my opinion, Mr. Chairman. I cannot say what the board will do.

"The Chairman: I am not asking what the board will do. I am asking what you will do.

"Mrs. Fleischman: I do not know, because the thing comes to the board to discuss, and I don't think it is pertinent to say what I should do a week from now. It is a special meeting."

I know of nothing else in the record that comes nearer than this to supporting an inference that appellant refused to produce the records or expressed unwillingness to produce them.

[9] DeJonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278; Herndon v. Lowry, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066; Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L. Ed. 1796.

[10] Schneiderman v. United States, supra note 9, 320 U.S. at page 136, 63 S. Ct. at page 1342, 87 L.Ed. 1796.

[11] Supra, note 1.

PRETTYMAN, Circuit Judge (dissenting).

I think this judgment should be affirmed, and because the disputed point is important in congressional committee proceedings, I state the reasons for my view.

The court finds error in that part of the trial judge's charge in which he said, at the end of a long sentence concerning the House Committee, its constitution and jurisdiction, and the issuance and pertinence of the subpoena, " * * *; that the members of the committee before whom the defendants appeared, pursuant to the subpoenas served on them, constituted a sufficient quorum to carry on the investigation." I find no error—certainly no reversible error—in the judge's observation, because I think that the presence of a quorum was immaterial to the issues presented by the case when the parties rested. If the judge had said that a quorum need not have been present under the circumstances, he would have been correct. A fortiori he committed no error when he said that those present were sufficient.

The indictment was for a willful default in failing to respond to a subpoena. A default is negative. It is not an act but is a failure to act. A person subpoenaed to produce books consciously and deliberately does not produce them. He is in default.

The statute under which the indictment was brought, provides in pertinent part, "Every person who having been summoned as a witness by the authority of either House of Congress * * *, willfully makes default, * * * shall be * * *", etc.[1] This statute describes an offense of omission. The provision generally applicable to court subpoenas is Rule 45(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A.—"Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued." That Rule refers to "Failure * * * to obey". It is not limited to refusal or to any other affirmative action.

A willful default may be evidenced by a declared refusal to respond, or it may be simply a deliberate failure to do anything. A subpoenaed person might appear before the full committee and elaborately, vociferously and defiantly declaim his rebellion against the summons and the committee. Another subpoenaed person might, without saying anything to anybody, but with deliberate resolve to avoid obedience, simply go fishing on the appointed day. The latter's default is as complete as that of the former. Whatever may be the factual circumstances, the default is complete when the summons is not obeyed, and if the disobedience is intentional, a willful default has occurred.

What happened in the case at bar? These persons were served with subpoenas. They made carefully prepared public statements. The statements were not offers of, or even gestures toward, compliance with the subpoenas. They were in part evasion and in part an assertion of reasons for non-compliance. Each member of the Executive Board said that he, or she, had no custody of or control over the books, that the Executive Secretary did, that he (the Board member) would not say whether he would consent to compliance in so far as he had power to do so; and the Executive Secretary said that the Executive Board had control over her and also that she was of opinion that the subpoena was not valid and, therefore, she could not comply with the Committee's "request". This appellant was present when the avowals were made, and she made precisely the same statement as did the other Board members. The burden of their briefs and argument here is that the subpoenaed persons did not have to comply. These tactics may ultimately be effective. But they do not obscure the undisputed simple facts that the persons summoned by the subpoenas did not produce the books; that they intended not to produce them; and that they made clear their intention by public statements.

The point presently at issue is whether a quorum of the Committee had to be present at the time and place when and where the subpoenaed persons made the public statements which evidenced their intention not to obey the summons. The point re-

---

[1] Rev.Stat. § 102, as amended, 52 Stat. 942 (1938), 2 U.S.C.A. § 192.

solves into two questions. Is the presence of a quorum under such circumstances and for that purpose an essential element of a prima facie case of willful default? If not, was it made material by any plea of the defendants?

The trial judge told the jury that the elements of the offense are (1) a valid subpœna, (2) legal service, (3) custody, dominion or control over the records, and (4) a willful failure to produce. I think that was correct. I think that it makes no difference whether a subpœnaed person actually makes a declaration of refusal to comply or, if he makes one, who hears it. I think that if these persons had intentionally stayed in New York and done nothing, they would have committed willful default. To be sure, an intent to default is plainer if there be a proclaimed refusal to respond. But such proclamation is not essential; much less is it essential that there be a proclamation of refusal in the presence of a quorum of the Committee. A stated refusal to respond is merely evidence of intent and might be made to members of the Committee, one member, a representative, or someone not connected with the Committee; or intent might be proved without any specific declaration of refusal. A default, in my view, is complete when there is an intended failure to respond to the subpœna.[2]

It is perfectly true that if a witness seeks to comply with a subpœna but no quorum of the committee is present to receive his testimony, he would not be guilty of default. But the absence of the quorum in such a situation would be part of a defense of willingness to comply. That the defense would be effective would not make the negation of its elements an essential of proof of the offense. Such is frequently the situation in criminal cases. Facts may be pertinent to a defense, but absence of such facts is not an essential element in proof of the crime. The prosecutor is not required to negative every conceivable circumstance which might be adequate as an explanation or excuse or reason for an offense. How does such a circumstance become material in a case? Only by being pleaded as an essential element of a defense. So with the absence of a quorum of a committee at the time and place designated in a subpœna. If a person charged with default should assert that he was ready and willing to comply, but that he did not comply because no quorum was there, he would thereby make the presence of a quorum a material issue. There was no such assertion or plea in the case at bar. Appellant does not assert that a quorum was not present to receive her ready testimony. She says that a quorum should have been present to hear her refusal to testify. What, I query, would be the situation if the subpœnaed persons had stayed in New York and proclaimed their refusal to a general press conference? Or had telegraphed it to the Chairman of the Committee? It seems to me that when the prosecution proved disobedience of the subpœna and established the intent to disobey by proving appellant's declaration of refusal to obey, its case was complete. Appellant could then have pleaded and proved a complete defense by showing that she was present, ready and willing to produce the books but that no quorum of the Committee was at the appointed place to receive them.

The court reasons that appellant could not have complied (the quorum not being present) if she had wanted to, and that, therefore, she was not in default. That is to say that although the prosecution proved that appellant did not comply and had no intention of complying, nevertheless it must also prove that if, contrary to the fact, she had wanted to comply, the Committee was there. I do not think so. It is not necessary to present proof upon a wholly hypothetical supposition, completely divorced from the pleaded or asserted issues. Appellant says *suppose* she had wanted to comply. She cannot defend that way. Courts and juries do not deal with purely speculative defenses. Only by a plea to which the absence of a quo-

2 See Blair v. United States, 1919, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979, and Brown v. United States, 1928, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500, for discussion of required conduct of a subpœnaed person.

rum is an essential element would the quorum become a material issue in the case.

Appellant contends, and this court holds, that although a plea of willingness to comply was not made, the question of whether a quorum of the Committee was present when these persons made their statements of non-compliance, was a material issue of fact which should have been submitted to the jury for decision. That means one of two things, either that the presence of a quorum at the time and place indicated in a subpoena, or at the time and place of a declaration of non-compliance, is an essential element of a prima facie case of willful default, or that the prosecution must negative a possible, but not pleaded, defense. Neither proposition is sound, in my opinion.

My view is that if failure to comply and intention not to comply are proved, and if the accused does not assert that he wished and tried to comply, it is immaterial whether he appeared before a quorum or not. Therefore, I do not think it was error for the trial court to fail to submit to the jury, as a material issue in this case, the question of fact whether there was or was not a quorum of the Committee present when appellant made her statement.

The supposed analogy to the quorum question in perjury cases, e. g., Christoffel v. United States,[3] is error, as I see it. There is no analogy. Perjury is an affirmative act. The accused must do something; he must testify falsely. And to constitute the statutory offense, the false testimony must be before a competent tribunal. If the tribunal is a committee, a quorum must be present in order to make it competent. I see no analogy to the offense of failing to act.

I am not sure what my brethren intend to hold as to the time and place when and where the quorum must be present to complete a default. This subpoena required the witness to be present at 10 a. m. on April 4th. It was afternoon (the late hour not being her fault) when she actually made her statement, indicating her refusal to respond to the subpoena. I am not certain whether the court holds that a quorum must have been present at 10 a. m., or must have been present at the time when the witness stated that she would not produce the books; and I do not understand what the rule would be if the witness stood out in the hallway and declared to the assembled press or other auditors that she would not go into the Committee room, or would not produce the books, or if she had stayed in New York and not come to Washington at all. All these questions are most pertinent, it seems to me, to a rule of law that the presence of a quorum of a committee is an essential element of the offense of willful default.

Of less importance than the foregoing, I note that there was categorical evidence that a quorum was present when appellant made her statement of refusal. Mr. Adamson testified: "They had a majority of the Committee there all the time, Mr. Rogge. * * * Yes. I am pretty sure they had at least five men present all through the day; but which five they were I would not undertake to say."

I most emphatically do not rest my view upon appellant's state of mind. I rest it upon her failure and refusal to comply with the subpoena to the extent of her power to do so. Her failure to comply, not the state of her mind, is the basis.

The foregoing is by way of dissent from the judgment of the court. I now state my view upon the question whether the District Court erred in not directing a verdict of acquittal. In the conclusion upon this point, Judge Proctor and I are in agreement.

■ The indictment was a joint one. It charged that "each and all of the defendants" willfully made default. The subpoena had directed this appellant to produce the books, etc., of the Joint Anti-Fascist Refugee Committee before the Congressional Committee in its chamber in Washington on April 4, 1946, at 10 o'clock, a. m. The persons subpoenaed, except Miss Bryan, constituted the Executive Board of the Joint Anti-Fascist Ref-

---

[3] 1948, —— U.S. App.D.C. ——, 171 F.2d 1004.

ugee Committee. The Executive Board was the highest authority of the Committee and controlled the policies and actions of the organization. As we have said, all members appeared at the designated time and place, and each, in turn, stated that he or she did not have possession, custody or control over the books; that Miss Bryan, the Executive Secretary, did. Each member of the Board was then asked whether he or she was willing, as a member of the Board, to permit the Congressional Committee to see the books; whether he or she would give consent to the Committee to see the books. Each member, including this appellant, replied that he did not know what he would do, that it was a matter for the Board to decide.

It seems perfectly clear from the foregoing that the members of the Executive Board jointly failed to comply with the subpœna. I return to the basic proposition in this case, that what these defendants did is not the essential fact; the essence was what they did not do. This was an offense of omission, not of commission. They, together, in concert, did not obey the subpœna. All participated. This appellant definitely and affirmatively joined with the others, to the extent of her power, in not complying. She was not indicted for failure by the others. She was indicted for her own failure. She, in Washington, on April 4, 1946, by announced purpose and act, refused to comply with the subpœna.

The claim by each member of the Executive Board that he had no control over the books is pure sophistry, to my mind. To be sure, he did not, as an individual, separate and apart from his fellow members. But the proposition that the members of a Board can jointly and unanimously refuse to direct an employee to produce books upon a court order, and then successfully avoid responsibility for the willful default by splitting their joint act into several separate individual acts, is wholly untenable.[4] I would have a lively curiosity as to the outcome of many sorts of litigation if that doctrine were established as to all actions, or failures to act, by ex-

ecutive boards, boards of directors, or boards of trustees. It seems to me that orders of courts, directed to such bodies or their employees, would be meaningless under that concept. Employees are surely under the control of the top authority of the organization. If the top authority could dissolve its joint control into nothingness by simply asserting that no one of them individually had control, no order upon an organization, corporate or joint, would be effective.

Some reference is made to meetings of the Executive Board in New York, not attended by this appellant. The default did not take place in New York or at any date prior to April 4, 1946. It occurred when these defendants did not produce the books in Washington on April 4th. This appellant participated in person and by a personal declaration in that failure.

Judge Proctor and I think that in respect to the sufficiency of the evidence the trial court was correct.

---

4 See Bough v. Lee, D.C.S.D.N.Y.1939, 29 F.Supp. 498, 501.