Hoestadter, J.
(dissenting). 1 dissent. The 17 defendants were convicted of disorderly conduct (Penal Law, § 722, subds. 2, 3, 4) under a single, omnibus complaint charging that on August 8, 1964, at 4:25 p.m., they unlawfully assembled at Duffy Square, “ obstructing the area to the exclusion of those wishing to use the same ’ ’ and delayed ‘ ‘ vehicular traffic while carrying placards and using loud and boisterous language; by their actions did cause a crowd to collect ,• when ordered [by the police] to move on the defendants did fail to do so, after being informed that their actions were not lawful”. None of these charges were established upon the trial, except only the admitted refusal of the defendants to disperse when ordered to do so by the Police Captain in charge of 10 Patrolmen, two mounted officers and a Sergeant. Implicit throughout the record is that the police had decided to prevent the meeting before it assembled, though proof of this predetermination was erroneously foreclosed by the Trial Judge.
On this appeal, the People urged, and my brethren have accepted, as the basis for affirmance, the defendants’ defiance of the police order and matters subsequent to it and attendant upon its forcible execution. I cannot agree; for this predicate of affirmance is without validity in divers aspects. The occurrences now offered as a basis for upholding the convictions were not the subject of the complaint charged. And the events, including any alleged disturbance by any defendant, ensuing upon the order, were the direct and immediate issue of a misconception by the police of the lawful warrant and scope of their authority.
The “May 2nd Movement” is a “peace” organization formed at Yale University. At 4:00 p.m. on August 8, 1964 it undertook to hold a rally at Duffy Square to protest against American involvement in the Viet Nam war. A Captain of police ordered the group to disperse within five minutes after a speaker sought to introduce a chairman for the meeting. Nothing of substance bad yet been uttered by either. No one had indicated any purpose other than by word of mouth to draw attention to the sponsors’ opposition to the Viet Nam war. All was peaceful — neither pedestrian nor vehicular traffic had been perceptibly slowed — certainly, neither was halted.
When defendants refused to terminate the rally, the Captain ordered his men on horseback and on foot to disrupt the assem *631 bly. Within 20 minutes after its inception, the order was executed; and the defendants were arrested and charged with disorderly conduct.
But, meetings such as this one are fully protected by the First and Fourteenth Amendments (as well as by the State Constitution, art. I, §§ 8, 9). “ Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public; and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions” (Hague v. C. I. O., 307 U. S. 496, 515; Kunz v. New York, 340 U. S. 290, 293; Cox v. Louisiana, 379 U. S. 536, 555). Before a rally may be dispersed, the speakers must have passed the bounds of argument or persuasion and undertaken incitement to riot (Feiner v. New York, 340 U. S. 315, 321).
Only “ when clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace or order, appears ”, may the State interfere with a demonstration (Cantwell v. Connecticut, 310 U. S. 296, 308). Absent these elements, a demonstration may not be arrested (Edwards v. South Carolina, 372 U. S. 229; Fields v. South Carolina, 375 U. S. 44; s. c. 372 U. S. 522). No such conditions existed during the instant demonstration. Hence, the police were without warrant to proscribe or disrupt it. The order and action thereon had no justification; the resultant disturbance was part of the res gestee engendered by them — culpability for which is imputable to the police — not to the defendants.
The orders of the policemen could not make the conduct of the defendants, otherwise lawful, unlawful. “ One cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution” (Wright v. Georgia, 373 U. S. 284, 291-292; Henry v. City of Rock Hill, 376 U. S. 776; People v. Collins, 44 Misc 2d 430, affd. 16 N Y 2d 554; see, also, Lombard v. Louisiana, 373 U. S. 267; Shuttlesworth v. Birmingham, 373 U. S. 262; Johnson v. Virginia, 373 U. S. 61; People v. Galpern, 259 N. Y. 279, 281). Enforcement of the law must itself be lawful to serve as predicate for criminal charges.
The commotion which inevitably ensued was the result of the gratuitous and forcible invasion of the rally by the police ■ — not of the conduct of the defendants. Confronted with the police assault, defendants could legally do what was reasonably necessary to resist the unlawful aggression (Penal Law, § 246, subd. 3; People v. Allen, 15 N Y 2d 558, 559; People v. Dreares, 15 A D *632 2d 204, affd. 11 N Y 2d 906; People v. Cherry, 307 N. Y. 308). ‘ ‘ Lacking the essential warrant, having abused the authority which was their trust, the officers stood bereft of their usual prerogatives” (People v. Cherry, supra, p. 311). In this context, defendants were liable to criminal sanctions only if they pursued a “ counterattack merely for the sake of revenge or the infliction of needless injury” (People v. McNeil, 15 N Y 2d 717, 718). The record shows none; indeed, it renders it manifest that the efficient, moving cause of any disturbances was the unlawful police action.
Apart from these considerations, egregious error is compounded by affirmance founded on any alleged disturbance — by some defendants — following the dispersal order. Whether, in the ease of any defendant, his conduct went beyond permissible protest is not before us, nor was it before the trial court. The complaint was not founded on any such claimed conduct. By it, none of the defendants were charged with assault or physical attack on policemen; none were accused of resisting arrest; none were charged with counterattacking the police. The only omnibus charge made against all — who were tried jointly — was that they had congregated at Duffy Square illegally; had impeded traffic; had caused a crowd to collect; and when ordered to move on, failed to do so. The evidence utterly fails to sustain this complaint.
The complaint assumed the validity of the unlawful order. This ill-founded assumption taints the entire record. In the main, the evidence adduced on the trial was tangential, if not wholly irrelevant, to the only issue which could be properly agitated under the complaint, i.e.: the conduct of the defendants before police intervention. We may not perpetuate its vice here. The complaint was not adequate to sustain the charges upon which conviction was rendered by the trial court nor as the predicate of the offenses now pressed upon us to sustain that judgment.
To charge defendants with one crime and convict them of others is to violate every procedural concept of American jurisprudence. As it is a “ violation of due process to convict and punish a man without evidence of his guilt ” (Thompson v. Louisville, 362 U. S. 199, 206), “ conviction upon a charge not made would be sheer denial of due process * * *. If the persons assembling have committed crimes elsewhere, if they have formed or arc engaged in a conspiracy against the public peace and order, they may be prosecuted for their conspiracy or other violation of valid laws. But it is a different matter *633 when ihe Sl.oie. instead of prosecuting them for such offenses, seizes upon mere participation in a peaceable assembly and a lawful public discussion as the basis for a criminal charge.” (De Jonge v. Oregon, 299 U. S. 353, 362, 365.) The convictions here may not stand — they were not based on charges made; and those set forth in the complaint were not substantiated in the evidence.
■Stripped of the immediacies, here a fundamental right was suppressed under guise of preserving order. Judged in the context of the purpose of the rally, defendants’ acts were constitutionally protected (Giboney v. Empire Stor. Co., 336 U. S. 490). ‘ ‘ The holding of meetings for peaceable political action can not be proscribed” (De Jonge v. Oregon, supra, p. 365). Defendants were entitled to their opinions. Eight or wrong, they had the constitutional prerogative — and immunity — peaceably to express them without hindrance by the police. 11 The Fourteenth Amendment does not permit a State to make criminal the peaceful expression of unpopular views” (Edwards v. South Carolina, 372 U. S. 229, 237). Those who wish to disseminate ideas need not present them first to police authorities for their consideration and approval (Cox v. Louisiana, 379 U. S. 536, 557). As Dean Lohman observed recently “ Officers must act as impartial referees to prevent violence ’ ’. They may not resort to the oppressive use of putative law to stifle peaceful protest 1 “ 'Compulsory unification of opinion achieves only the unanimity of the graveyard. * * * the First Amendment * * * was designed to avoid these ends by avoiding these beginnings. * * * Authority here is to be controlled by public opinion, not public opinion by authority.” (Board of Educ. v. Barrette, 319 U. S. 624, 641.) Earlier this year President Johnson told 10,000 college students: “ Free speech * * * free assembly * * * parades * * * and demonstrations * * * are what you and all other Americans need to stand up for today ’ ’. He recognized that such freedom of speech — in protest — is the secret weapon of an open society — the well-spring of its vitality. It nourishes the spirit and practice of civility. Men’s instinctual violence — in disagreement — is conducted into peaceful channels. And it is salutary for the State in that it serves as a safety valve in times of stress and strain. Cabdozo summed it up as “ the matrix * * * of nearly every other form of freedom ” (Palko v. Connecticut, 302 U. S. 319, 327). But speech, to be potent, must be audible. As I had occasion to point out in another context: * ‘ A right which is effective only when not needed, is scarcely a right at all ” *634 (“The Fifth Amendment and the Immunity Act of 1954”, 10 Record of Assn. of Bar of City of N. Y. 453).
The convictions should be reversed and the complaint dismissed.
Capozzoli, J. P., concurs with Hecht, J., in opinion; Hopstadteb, J., dissents in opinion.
Judgments affirmed.