IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2006

## STATE OF TENNESSEE v. CALVIN FLEMING

**Appeal from the Circuit Court for Tipton County**
**No. 5045     Joseph H. Walker, III, Judge**

**No. W2006-00098-CCA-R3-CD  - Filed February 27, 2007**

The Defendant, Calvin Fleming, was convicted of attempted first degree murder and aggravated assault. The Defendant was sentenced, as a career offender, to an effective sentence of sixty years. On appeal, the Defendant contends that: (1) the trial court erred when it admitted photographs of the victim's wounds into evidence because the State failed to authenticate them; (2) the evidence presented at trial was insufficient to support the Defendant's convictions for attempted first degree murder because there was no proof of premeditation; and (3) his convictions for attempted first degree murder and aggravated assault violate constitutional principles of double jeopardy. Following our review, we affirm the judgment of the trial court as to the attempted murder, but we reverse the judgment as to the aggravated assault because the aggravated assault should have been merged into the attempted murder. Thus, we remand the case for the trial court to enter a judgment consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

William D. Massey (on appeal), Memphis, Tennessee, and Harold D. Archibald (at trial), Memphis, Tennessee, for the Appellant, Calvin Fleming.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Elizabeth Rice, District Attorney General; James Walter Freeland Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's convictions for attempted first degree murder and aggravated assault. The following evidence was presented at trial:

Shannon Beasley, a sergeant with the Tipton County Sheriff's Department, testified that he was dispatched to the intersection of Simmons Road and Adams Street, near the entrance to Wilkinsville Trailer Park, where a man was allegedly beating a woman. When he arrived at the crime scene, he observed an unattended vehicle in the road. Sergeant Beasley was then dispatched to a home inside Wilkinsville Trailer Park, and, once inside, he saw the victim whose chest was bleeding.

Chad Harber, who lives near the intersection of Simmons Road and Adams Street, testified that around 6:00 p.m. he saw a man in a Lincoln Town Car ram the rear of a Ford Contour twice. The man inside the Town Car went to the Contour and beat the woman inside. Harber saw the woman get out of the car as the man beat her and then enter a different nearby vehicle. The man returned to the Town Car and drove toward the highway. On cross-examination, Harber testified that he did not see the man kick or stomp the woman.

Vickey Cook testified that while driving on Simmons Road during the evening hours she saw a damaged car and a couple fighting. The woman was in the passenger seat of a car, and a man stood outside the car moving his arm up and down. The man struck the woman about three times, and the woman then ran toward Cook's car screaming for help. The man pushed the woman down in front of Cook's car and continued to beat the woman, hitting her about four times. Cook sounded her car horn, the man stopped hitting the woman, and then the man drove away. The woman, who was covered with blood, finally stood up and came to Cook's car. Cook let her in the car, took the woman to the woman's father's house, and then helped the woman call 911. Cook explained that the woman tried to telephone 911 but lost consciousness before making the telephone call. An ambulance and police officers arrived, and the ambulance took the woman away. On cross-examination, Cook acknowledged that it was dark outside when she witnessed these events.

Christy Fleming, the victim, testified that she has been married to the Defendant for seven years, and they separated on January 3, 2005. After the separation, Fleming and her children moved to her mother's house. Fleming knew that the Defendant wanted her to return, but she did not speak with him.

Fleming described how, nine days after their separation, the Defendant attacked her on her way from work to her father's house. She saw the Defendant standing next to his car with its hood and trunk lids raised. She explained that she thought the Defendant had followed her because he knew when she left her place of employment, he knew where she was heading, and he had stopped his car at an intersection that was fifteen minutes away from her father's home. She pulled over to the Defendant and told him not to follow her. The Defendant replied that he was not bothering her, and Fleming returned to her vehicle and headed toward her father's house. She again noticed the Defendant following her. While stopped at an intersection, her vehicle was struck from the rear, and then the Defendant came to her car, opened her door, and began stabbing her. Fleming thought that the Defendant stabbed her five times in the chest. He also stabbed her in the stomach, arm, leg, and neck. She recalled kicking, screaming, and asking God to help her. Suddenly, she found herself on

the pavement, and the Defendant stomped on her chest area where he had previously stabbed her. Fleming heard a car horn, then rose from the pavement, went to a nearby car, and asked the driver to take her to her father's house. Fleming could not recall all the events that occurred at her father's house. Since being treated at a hospital, Fleming received a Percocet prescription, and she still experiences pain.

On cross-examination, Fleming acknowledged that when she first saw the Defendant on the day of the attack the Defendant was already at an intersection between her place of employment and her father's house. She did not recall the Defendant telling her that he was putting oil in his car when she initially stopped to speak with him. She denied that the Defendant asked her if she was alright after he rear-ended her vehicle and that she then pulled out a knife that the Defendant later used.

Billy Daugherty, an investigator with the Tipton County Sheriff's Department, described how he investigated the crime scene at the intersection of Simmons Road and Adams Street, how he located the Defendant's vehicle, and how he diagramed the crime scene. Scottie Delashmit, an investigator with the Tipton County Sheriff's Department, described his involvement with the investigation of this crime. He went to Fleming's father's house after Fleming had been taken to the hospital and saw some wrappers that the EMTs had used and a large amount of blood on the kitchen floor. He explained that the Defendant became a suspect, and the authorities located the Defendant's vehicle. A photograph of the damaged vehicle was entered into evidence.

Based upon this evidence, the jury convicted the Defendant of attempted first degree murder and of aggravated assault.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred when it admitted photographs of the victim's wounds into evidence because the State failed to authenticate them; (2) the evidence presented at trial was insufficient to support the Defendant's conviction for attempted first degree murder because there was no proof of premeditation; and (3) his convictions for attempted first degree murder and aggravated assault violated constitutional principles of double jeopardy.

## A. Photographs

The Defendant contends that the trial court erred when it admitted photographs of the victim's wounds into evidence because the State failed to authenticate them. The State asserts that the Defendant has waived this issue by failing to cite to the record or to provide any citation to any legal authority.

Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." See also Tenn. R. App. P. 27(a)(7). Thus, issues that are not adequately briefed are

deemed waived. The Defendant does not provide any citation to any legal authority to support his contention. Accordingly, the Defendant has waived his claim for relief on this issue.

## B. Sufficiency of the Evidence

The Defendant next contends that the evidence is insufficient to sustain his conviction for attempted first degree murder because there was no proof that he committed this crime with premeditation. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass,13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775 (citing State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Under Tennessee Code Annotated section 39-13-202(a)(1) (2003), first degree murder is the premeditated and intentional killing of another person. A premeditated killing is one "done after the

exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d). To be premeditated, the intent to kill must have been formed before the act itself, and the accused must be sufficiently free from excitement and passion. Id. Whether premeditation is present is a question of fact for the jury, and it may be determined from the circumstances surrounding the offense. Because the trier of fact cannot speculate as to what was in the killer's mind, the existence of facts of premeditation must be determined from the killer's conduct in light of the surrounding circumstances. Although there is no strict standard governing what constitutes proof of premeditation, circumstances from which a jury may infer premeditation include planning activity by a defendant prior to the killing; the defendant's prior relationship with the victim; and the manner of the killing. State v. Hall, 958 S.W.2d 679, 704 (Tenn. 1997); see also State v. Jones, 15 S.W.3d 880, 889 (Tenn. Crim. App. 1999); State v. Schafer, 973 S.W.2d 269, 273 (Tenn. Crim. App. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995); State v. Gentry, 881 S.W.2d 1, 4-5 (Tenn. Crim. App. 1993). Thus, for example, our Supreme Court has held that premeditation may be inferred from a defendant's use of a deadly weapon upon an unarmed victim; the cruelty of the killing; declarations by a defendant of an intent to kill; the defendant's procurement of a weapon; a defendant's preparations prior to a killing for concealment of the crime; and calmness immediately after the killing. State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998); State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997).

Applying these factors, there are numerous circumstances from which the jury could conclude that the attempted killing of Christy Fleming by the Defendant was premeditated: (1) the victim was unarmed; (2) the Defendant ambushed the victim in her automobile; (3) the Defendant secured a weapon prior to the attempted murder; and (4) the Defendant's prior relationship with the victim. The evidence, when viewed in a light most favorable to the State, reflects that the Defendant and the victim had acrimoniously separated after seven years of marriage, and the Defendant then used a knife or other sharp object to repeatedly stab his unarmed wife after he followed her and rear-ended her car. The victim testified that the Defendant stabbed her in the neck and five times in her chest. The victim was covered with blood and eventually became unconscious. This evidence is sufficient to sustain the jury's verdict. We note that a jury may infer premeditation from the circumstances surrounding an attempted murder, and this Court should not re-weigh or re-evaluate the evidence or substitute its inferences for those drawn by the trier of fact from the evidence. Therefore, the Defendant is not entitled to relief on this issue.

### C. Double Jeopardy

The Defendant contends that his convictions for both aggravated assault and attempted first degree murder offend the principles of double jeopardy. The State contends that the Defendant waived this issue because he failed to raise it in his motion for new trial.

Rule 3(e) of the Tennessee Rules of Appellate Procedure provides:

[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused,

> misconduct of jurors, parties or counsel, or other action upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e); see also State v. Martin, 940 S.W.2d 567, 569 (Tenn.1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial). A panel of this Court has previously held that pursuant to Rule 3(e) "the failure to file a motion for a new trial, the late filing of a motion for a new trial, and the failure to include an issue in a motion for a new trial results in waiver of all issues which, if found to be meritorious, would result in the granting of a new trial." State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994) (footnote omitted). This waiver does not apply however, if the issue is found to be meritorious and would result in the dismissal of the prosecution against the accused. Id. at 415, n.5 (citing State v. Davis, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987); State v. Moore, 713 S.W.2d 670, 673-74 (Tenn. Crim. App. 1985); State v. Durham, 614 S.W.2d 815, 816 n.1 (Tenn. Crim. App. 1981)).

In the case under submission, if the Defendant is correct in his assertion that his convictions for both attempted first degree murder and aggravated assault violate double jeopardy principles he would be entitled to dismissal of the prosecution. Therefore, we will address this issue despite the Defendant's failure to include it in his motion for new trial.

The State in its brief to this Court states that principles of double jeopardy do not apply because the proof showed that the Defendant attempted to kill the victim by stabbing her and that he committed aggravated assault by ramming his car (i.e., a deadly weapon) into the victim's car. If the State is correct, and the Defendant was properly indicted for, and convicted of, aggravated assault with a deadly weapon, then double jeopardy does not require us to merge the attempted first degree murder conviction with the aggravated assault conviction. However, if the Defendant was indicted for, and convicted of, aggravated assault based upon the infliction of serious bodily injury, merger may be required.

The Defendant was indicted in count 1 for attempted first degree murder. In count 2 the Defendant was indicted for "unlawfully, feloniously and knowingly [causing] serious bodily injury to Christy Fleming, in violation of T.C.A. 39-13-102 . . . ." According to Tennessee Code Annotated section 39-13-102, the aggravation of an assault can be committed either by serious bodily injury or by the use of a deadly weapon. The indictment clearly relied upon the serious bodily injury portion of the aggravated assault statute and did not indict the Defendant for aggravated assault with a deadly weapon. Therefore, we must determine if the indictment is fatally defective if it charges aggravated assault based upon the infliction of serious bodily injury, but the State relies on evidence of aggravated assault with a deadly weapon to support the conviction.

Principles of an indictment are based upon the premise that fair and reasonable notice of the charges against an accused is a fundamental constitutional requirement. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Our state constitution requires that those accused in criminal prosecutions

be informed of the "nature and cause of the accusation" against them. Tenn. Const. art. I, § 9; Warden v. State, 381 S.W.2d 244, 245 (Tenn. 1964); State v. Perkinson, 867 S.W.2d 1, 5 (Tenn. Crim. App. 1992). The United States Constitution contains a similar guarantee. U.S. Const. amend. VI. Convicting a person of a crime which is not raised by the indictment and is not a lesser included offense denies an accused the right to notice of the nature and cause of the accusation. Hagner v. United States, 285 U.S. 427, 430 (1932).

In addition to constitutional notice requirements, due process guarantees that the accused will have a fair opportunity to defend against the charges. A person who is convicted without receiving fair and reasonable notice of the specific charges is denied due process under the Fifth and Fourteenth Amendments to the United States Constitution. Jackson v. Virginia, 443 U.S. 307, 314(1979); Cole v. Arkansas, 333 U.S. 196, 201 (1948); DeJonge v. Oregon, 299 U.S. 353, 362 (1937); Olsen v. McFaul, 843 F.2d 918 (6th Cir.1988); State v. Morgan, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979).

To satisfy constitutional notice requirements, an indictment or presentment must provide notice of the offense charged, an adequate basis for the entry of a proper judgment, and suitable protection against double jeopardy. State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991); State v. Lindsay, 637 S.W.2d 886, 890 (Tenn. Crim. App. 1982). The indictment must contain factual allegations relating to every essential element of the offense. State v. Morgan, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979). The facts must be stated in ordinary and concise language so that a person of "common understanding" will know what is intended. Warden v. State, 381 S.W.2d 244, 245 (Tenn. 1964); State v. Lindsay, 637 S.W.2d at 890. A judgment based on an indictment that does not allege all the essential elements of the offense is a nullity. Warden v. State, 381 S.W.2d at 245; McCracken v. State, 489 S.W.2d 48, 53 (Tenn. Crim. App. 1972).

In summary, an indictment has three purposes in Tennessee. First, it must inform a defendant of the precise charges. Second, it must enable the trial court upon conviction to enter an appropriate judgment and sentence; and, last, it must protect defendant against double jeopardy.

The indictment clearly alleged serious bodily injury as the aggravation of the assault. Further, while the proof at trial was sufficient to sustain aggravated assault with a deadly weapon, this was not the argument made by the prosecutor at trial, who never attempted to establish two separate crimes of aggravated assault and attempted first degree murder. Under these circumstances, we hold that the Defendant was indicted for, and convicted by the jury of, aggravated assault based upon the serious bodily injury he inflicted on the victim when he stabbed her.

Accordingly, we return to the Defendant's contention that his conviction for attempted first degree murder should merge with his conviction for aggravated assault because not so doing violates principles of double jeopardy. The double jeopardy clause in the United States Constitution provides that no person "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. const. amend V. Similarly, the Tennessee constitution states that "no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Const. art. I, § 10. The

constitutional right against double jeopardy protects against, <u>inter</u> <u>alia</u>, multiple punishments for the same offense. <u>State v. Denton</u>, 938 S.W.2d 373 (Tenn. 1996). To determine whether a defendant has received multiple punishments for the same offense, our Supreme Court has said that the reviewing court should consider: (1) the statutory elements of the offenses; (2) the evidence used to prove the offenses; (3) whether there were multiple victims or discrete acts; and (4) the purposes of those respective statutes. <u>Id.</u> at 381.

Weighing each of these factors, we conclude that the Defendant's convictions for attempted first degree murder and aggravated assault are the same for double jeopardy purposes because they were one continuous act. Thus, the conviction for aggravated assault should be merged into the conviction for attempted murder. We reverse the judgment of the trial court on this issue, and remand for an entry of judgment consistent with this opinion.

### III. Conclusion

Based upon the aforementioned reasoning and authorities, we affirm the trial court in part, reverse in part, and remand for the entry of an appropriate judgment.

_____
ROBERT W. WEDEMEYER, JUDGE