421 F.2d 1142
 Simon BOORDA, Petitioner,
v.
SUBVERSIVE ACTIVITIES CONTROL BOARD, Respondent.
Robert ARCHULETA and Wayne Dallas Holley, Petitioners,
v.
SUBVERSIVE ACTIVITIES CONTROL BOARD, Respondent.
 No. 22514.
 No. 22522.
 United States Court of Appeals District of Columbia Circuit.
 Argued September 16, 1969.
 Decided December 12, 1969.
 Certiorari Denied April 20, 1970.
 
 See 90 S.Ct. 1365.
 Mr. John J. Abt, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Joseph Forer, Washington, D. C., was on the brief, for petitioners.
 Mr. Kevin T. Maroney, Atty., Department of Justice, with whom Mr. J. Walter Yeagley, Asst. Atty. Gen., Messrs. Frank R. Hunter, Jr., General Counsel, Charles F. Dirlam, Assistant General Counsel, Subversive Activities Control Board, and Mrs. Lee B. Anderson, Atty., Department of Justice, were on the brief, for respondent.
 Mr. Lawrence Speiser, Washington, D. C., filed a brief on behalf of American Civil Liberties Union, as amicus curiae urging reversal.
 Before BAZELON, Chief Judge, and WRIGHT and McGOWAN, Circuit Judges.
 BAZELON, Chief Judge:
 
 
 1
 These are petitions under § 14(a) of the Subversive Activities Control Act[1] to set aside orders of the Subversive Activities Control Board determining that each of the several petitioners is "a member of the Communist Party of the United States of America, a Communist-action organization." The fact of membership is not at issue.[2] Instead, petitioners attack the Board's construction, and the constitutionality, of the Act. The Board erred, they argue, in taking official notice of its prior determination that the Communist Party is a Communist-action organization, and in not allowing petitioners to demand a redetermination of the status of the Party in the proceedings against them. Additionally, they claim that the Act is constitutionally defective in allowing public disclosure of an individual's membership to be made without a finding that the individual concerned shares in any illegal purposes of the organization to which he belongs. We find this second argument persuasive.[3]
 
 I.
 
 2
 Under the Act, when the Attorney General has "reason to believe * * * that any individual is a member of an organization which has been determined by final order of the Board to be a Communist-action organization," he is to file a petition with the Board seeking a determination "that such individual is a member of such Communist-action organization." § 13(a). After hearing, the Board is to make a written report including its findings of fact. If it determines that the "individual is a member of a Communist-action organization," it shall issue and serve him with an order "determining such individual to be a member of a Communist-action organization." § 13(g) (2).[4] Petitioners argue that the difference in language between the two subsections is critical: that is, they would read § 13(a) as instructing the Attorney General to institute proceedings before the Board whenever it comes to his attention that an individual belongs to any organization "which has been determined by final order of the Board to be a Communist-action organization." But § 13(g) (2) requires the Board to determine that the "individual is a member of a Communist-action organization," and this language is said to imply that, during the course of the hearings on a petition to determine an individual's membership, the Board must not only find that the individual is a member of a named organization, but must also redetermine that the organization is in fact a Communist-action organization.[5] Support for this construction is sought in § 13(b) and (i), which provide for redetermination, not more than once each calendar year, of the status of individuals and organizations against which Board orders are outstanding. Petitioners would read these subsections to allow an individual to reopen the status of an organization of which he is a member in a § 13(b) petition for redetermination. Therefore, they argue, § 13(g) should be read in the same way, and an individual should be allowed to litigate the status of an organization of which he is alleged to be a member during the course of the initial proceedings against him.
 
 
 3
 On its face, § 13(b) does not compel the construction sought by petitioners. It provides, in pertinent part:
 
 
 4
 Any organization as to which there is in effect a final order of the Board determining it to be a Communist-action or Communist-front organization, and any individual as to whom there is in effect a final order of the Board determining such individual to be a member of a Communist-action organization may, not more often than once in each calendar year, file with the Board and serve upon the Attorney General a petition for a determination that such organization no longer is a Communist-action or Communist-front organization, or that such individual no longer is a member of a Communist-action organization, as the case may be.
 
 
 5
 (emphasis added). This language is not entirely free from ambiguity, but it seems to imply that an individual, in a § 13(b) proceeding, may contest only the fact of his membership in a named organization against which an order is already outstanding.[6] The limitation of petitions to one per calendar year is at least an indication that Congress intended that no particular issue should be relitigated more than once each year.[7] Allowing individual members of an organization to reopen the complex question whether the organization to which they belong is a Communist-action organization would be to open the door to substantial delaying tactics without providing a corresponding benefit to anyone.[8] Absent any support in the legislative history for petitioners' construction of § 13(b),[9] we cannot conclude that it was intended to allow individuals to contest the status of the organizations to which they belong.
 
 
 6
 Deprived of any support from § 13(b), petitioners' construction of § 13(g) must likewise fail. That construction would require us to read identical statutory language[10] in substantially different ways without any apparent support for such a different construction in the legislative history.[11] It would raise a serious risk of inconsistent adjudications; that is, of opposite determinations of the same question (whether a given organization is a Communist-action organization) in proceedings against different individuals.[12] That § 13(a) allows individual proceedings to be consolidated is no assurance that they would be. The Board did not err in holding that petitioners may not challenge the status of the Communist Party in the instant proceeding.
 
 II.
 
 7
 We must therefore face the constitutional question. Petitioners argue that § 13(g) (2) of the Act[13] is invalid because it provides for public disclosure of the fact of their membership in the Communist Party whether or not they intend to further any of the Party's illegal, as well as its legal and constitutionally protected aims.[14] The Board's primary response to this argument is that it is foreclosed by the Supreme Court's decision in Communist Party v. Subversive Activities Control Board, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961).[15]
 
 
 8
 The Supreme Court in the Communist Party case was presented with the question whether the First Amendment prohibited the requirement, set forth in § 7 of the original Act,[16] that organizations found to be dominated by a foreign power and intending the illegal overthrow of existing government could be required to file registration statements including the names and addresses of their members.[17] Individual members of the Communist Party were not parties to the action, but the Court allowed the Party standing to
 
 
 9
 assert those rights of its members, such as anonymity, which are allegedly infringed by the very act of its filing a registration statement, and which could not be otherwise asserted than by raising them here.
 
 
 10
 367 U.S. at 81, 81 S.Ct. at 1402.
 
 
 11
 The Court examined the structure of the Act, and found that the registration and disclosure requirements of § 7 did not attach "to the incident of speech, but to the incidents of foreign domination and of operation to advance the objectives of the world Communist movement." Id. at 90, 81 S.Ct. at 1407. Since regulation was premised on constitutionally unprotected conduct, the Court was required to balance "the value to the public of the ends which the regulation may achieve" against "the impediments which particular governmental regulation causes to entire freedom of individual action." Id. at 91, 81 S.Ct. at 1407; see United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Although the Court did not consider the incidental infringement of First Amendment rights to be insubstantial, see 367 U.S. at 102, 81 S.Ct. 1357, it concluded that the importance of the government's interest in disclosing the names of those who desired to further the illegal aims of Communist-action organizations justified the requirement that such organizations make public their membership lists. Id. at 102-103, 81 S.Ct. 1357.
 
 
 12
 The present case, however, stands on an entirely different footing. Of course, in both cases the class of persons upon whom disclosure ultimately operates is the same — all members of the organization, whether innocent or guilty. But § 7 of the original Act on its face dealt directly with organizations at least some of whose members shared in the illicit, constitutionally unprotected aims of the organization. See id. at 23-27, 42-55. Of course it would hardly have been practicable to require the organizations themselves to distinguish in their membership lists between innocent and guilty members. Therefore, the disclosure provisions were viewed as attaching to the incidents of foreign domination and illicit purpose, characteristics of the organization and of some but not all of its members. Innocent members were unavoidably caught up in a net designed to disclose the guilty. But § 13(g) (2) operates directly on individuals; consequently, the "operative fact[s] upon which [the statute] depends," United States v. Robel, 389 U.S. 258, 263, 88 S.Ct. 419, 423, 19 L.Ed.2d 508 (1967), must be facts characteristic of the individual upon whom the statute operates. Under § 13(g) (2), disclosure attaches to mere membership in a Communist-action organization, whether or not the member whose affiliation is to be publicized has engaged in, or has any intent to further, the illicit ends of the organization. If mere membership, to which disclosure attaches, is constitutionally protected, the balancing test is inapplicable. Communist Party, supra, 367 U.S. at 90, 81 S.Ct. 1357.[18] Consequently, the question for decision is simply whether the statute infringes protected rights. De Jonge v. Oregon, 299 U.S. 353, 364-365, 57 S.Ct. 255, 81 L.Ed. 278 (1937).
 
 
 13
 It seems clear to us that mere membership in the Communist Party is protected by the First Amendment. For it is "now beyond dispute," Bates v. City of Little Rock, 361 U.S. 516, 523, 80 S.Ct. 412, 4 L.Ed.2d 480 (1961), that "an individual's right of association * * * is protected by the provisions of the First Amendment." United States v. Robel, 389 U.S. 258, 263, 88 S.Ct. 419, 423 (1967). When a "quasi-political part[y] or other group * * * may embrace both legal and illegal aims," Scales v. United States, 367 U.S. 203, 229, 81 S.Ct. 1469, 1486, 6 L.Ed.2d 782 (1961), affiliation with and membership in that group are constitutionally protected except for those who join "with the `specific intent' to further illegal action." Elfbrandt v. Russell, 384 U.S. 11, 17, 86 S.Ct. 1238, 1241, 16 L.Ed.2d 321; see Noto v. United States, 367 U.S. 290, 299-300, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961). "Assuming that some members of the Communist Party * * * had illegal aims and engaged in illegal activities, it cannot automatically be inferred that all members shared their evil purposes or participated in their illegal conduct." Schware v. Board of Bar Examiners, 353 U.S. 232, 246, 77 S.Ct. 752, 760, 1 L.Ed.2d 796, 64 A.L.R. 2d 288 (1957). For "men in adhering to a political party or other organization notoriously do not subscribe unqualifiedly to all of its platforms or asserted principles." Schneiderman v. United States, 320 U.S. 118, 136, 63 S.Ct. 1333, 1342, 87 L.Ed. 1796 (1943).[19] Therefore the fact that some members of the Communist Party may be engaged in activity not protected by the First Amendment does not mean that the protected activity of other members may be infringed. If rights are abused, "legislative intervention can find constitutional justification only by dealing with the abuse. The rights themselves must not be curtailed." De Jonge v. Oregon, supra, 299 U.S. at 364-365, 57 S.Ct. at 260.
 
 
 14
 Since the disclosure provisions of § 13(g) (2) attach solely to constitutionally protected rights, the only remaining question is whether they operate to discourage or penalize the exercise of those rights. We believe that they do. "Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 462, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958). In the present situation, we cannot assume that disclosure of an individual's membership in the Communist Party will not operate as a substantial burden upon the exercise of his right of free association.[20] Therefore, the disclosure provisions of § 13(g) (2) must fall as contrary to the First Amendment. United States v. Robel, supra; De Jonge v. Oregon, supra.
 
 III.
 
 15
 We would be led to the same conclusion under the balancing test as enunciated in the Communist Party case.[21] The Court in that case sustained the disclosure provisions of § 7 of the original Act, which like the present statute made no distinction between innocent and guilty members. But disclosure in that case was sought from the Party, not from individuals,[22] and consequently there was available no practicable, less intrusive alternative to disclosure of the names of all members: to ask the Party itself to distinguish between those of its members who did and who did not share its illegal aims would be to ask the impossible. But proceedings under § 13(g) (2) are on a case-by-case basis, rendering it feasible to distinguish in each case between protected and unprotected membership. Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961). Therefore, in weighing the public interest in disclosure, we must weigh a different quantity: since innocent members may easily be separated from guilty ones, the public interest in exposure of the guilty cannot be used to justify exposure of the innocent. See Keyishian v. Board of Regents, 385 U.S. 589, 606-607, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). Since the First Amendment precludes the government from claiming an interest in public disclosure of the associations of innocent members of Communist-action organizations,[23] Elfbrandt v. Russell, 384 U.S. 11, 17, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966), the governmental interest to be weighed in this case is nil.[24]
 
 
 16
 Since § 13(g) (2) of the Subversive Activities Control Act is contrary to the First Amendment, the orders issued in these cases cannot stand. The cases must be remanded to the Subversive Activities Control Board with instructions to dismiss the petitions.
 
 
 17
 It is so ordered.
 
 
 
 Notes:
 
 
 [1]
 Title I of the Internal Security Act of 1950, 64 Stat. 987,as amended 50 U.S. C. §§ 781-798 (1964 & Supp. IV, 1969). Unless otherwise indicated, all references are to the Act as amended.
 
 
 [2]
 Petitioners have refused to respond to the allegations of membership on the ground that the statute under which proceedings were had is unconstitutional
 
 
 [3]
 We do not, therefore, consider petitioners' other constitutional claims
 
 
 [4]
 If the Board determines that an individual is not a member of a Communist-action organization, it shall issue and serve upon the Attorney General "an order denying the determination sought by his petition." § 13(h) (2)
 
 
 [5]
 Petitions for determination that an individual is a member of a Communist-action organization apparently cannot be brought until the organization in question has been determined by the Board to be a Communist-action organizationSee § 13(a).
 
 
 [6]
 Of course, a petitioner in a § 13(b) proceeding could argue that there was no longer a Board order outstanding against an organization of which he was a member
 
 
 [7]
 The limitation of § 13(b) petitions to one per year was contained in the original act and carried over in the 1968 amendments. But it is of some relevance that the House Report on the 1968 amendments indicated substantial concern over delay in Board proceedingsSee H.R.Rep. No. 733, 90th Cong., 1st Sess. 10 (1967).
 
 
 [8]
 An organization may, of course, reopen the question of its status once per year under § 13(b); this should provide at least some remedy for the organization's members
 
 
 [9]
 Petitioners have directed us to no such material, nor have we been able to unearth any
 
 
 [10]
 The phrase "is a member of a Communist-action organization," appearing in § 13(b) and (g) (2) of the Act
 
 
 [11]
 As originally enacted, § 13(g) (2) spoke of "a Communist-action organization (including an organization required by final order of the Board to register under § 7(a))" (emphasis added). 64 Stat. 1000. The italicized phrase is missing from the section as amended in 1968. But the House Report on the amendments describe them as simply "conforming amendments" to bring the Act in line with Albertson v. SACB, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965). We do not believe that the House intended the radical alteration in Board proceedings sought by petitioners. See H.R.Rep. No. 733, 90th Cong., 1st Sess. 23 (1967).
 
 
 [12]
 A "basic objective" of the Act is to provide public information concerning Communist activitiesSee H.R.Rep. No. 733, supra note 11, at 3. A regular pattern of inconsistent determinations based not on changed circumstances but solely on the particular evidence adduced at different proceedings would hardly advance this objective.
 
 
 [13]
 Section 13(g) provides:
 If, after hearing upon a petition filed under subsection (a) of this section the Board determines —
 * * * * *
 (2) that an individual is a member of a Communist-action organization it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served on such individual an order determining such individual to be a member of a Communist-action organization.
 All such orders are a matter of public record. § 9(a).
 
 
 [14]
 Neither petitioners nor the Board suggests that § 13(g) (2) could be construed so as to apply only to those members of Communist-action organizations who share in the group's illegal aims, and we believe they are correct. United States v. Robel, 389 U.S. 258, 262, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967); Aptheker v. Secretary of State, 378 U.S. 500, 511 n. 9, 515-516, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964);see Killian v. United States, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961).
 
 
 [15]
 It has been elsewhere suggested that Supreme Court cases subsequent to the decision inCommunist Party have eroded its validity. Note, Civil Disabilities and the First Amendment, 78 Yale L.J. 842 (1969); see United States v. Robel, 389 U.S. 258, 88 S.Ct. 419 (1967); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966). In view of the disposition made here, we need express no opinion on this point.
 
 
 [16]
 That section has since been repealed. Act of January 2, 1968, Pub.L. No. 90-237, § 5, 81 Stat. 766
 
 
 [17]
 The Court inCommunist Party phrased the issue as follows:
 The Communist Party would have us hold that the First Amendment prohibits Congress from requiring the registration and filing of information, including membership lists, by organizations substantially dominated or controlled by the foreign powers controlling the world Communist movement and which operate primarily to advance the objectives of that movement: the overthrow of existing government by any means necessary and the establishment in its place of a Communist totalitarian dictatorship.
 367 U.S. at 88-89, 81 S.Ct. at 1406. It pointed out that "our consideration of any other provisions than those of § 7, requiring Communist-action organizations to register and file a registration statement, could in no way affect our decision in the present case." Id. at 77, 81 S.Ct. at 1400.
 
 
 [18]
 See also United States v. Robel, 389 U.S. 258, 268 n. 20, 88 S.Ct. 419, 426 (1967), where the Supreme Court explicitly rejected any attempt at "balancing" in dealing with § 5 of the Act:
 It has been suggested that this case should be decided by "balancing" the governmental interests expressed in § 5 (a) (1) (D) against the First Amendment rights asserted by the appellee. This we decline to do. We recognize that both interests are substantial, but we deem it inappropriate for this Court to label one as being more important or substantial than the other. * * *
 Petitioners suggest that this footnote implies that the approval of "balancing" in Communist Party, see 367 U.S. at 91, 81 S.Ct. 1357, has since been withdrawn. But the Court once again resorted to a balancing test in United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). It appears, then, that balancing may be appropriate when a statute is directed at constitutionally unprotected conduct, and infringes upon protected conduct only as an unavoidable side effect of an otherwise unexceptionable purpose. But where, as in Robel, "the operative fact upon which [the statute] depends is the exercise of [a right] protected by the provisions of the First Amendment," 389 U.S. at 263, 88 S.Ct. at 423, the First Amendment precludes a resort to "balancing."
 
 
 [19]
 The Board relies upon Adler v. Board of Education, 342 U.S. 485, 494-495, 72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472 (1952), for the contrary proposition. But the Supreme Court in Keyishian v. Board of Regents, 385 U.S. 589, 595, 87 S.Ct. 675, 679, 17 L.Ed.2d 629 (1967) pointed out that "pertinent constitutional doctrines have since rejected the premises" of that decision
 
 
 [20]
 There is no direct evidence in the record in this case as to the degree of harassment that one named as a member of the Communist Party may suffer as a result. But although it is true that the Supreme Court has in some cases relied solely on record evidence to establish such a possibility,e. g., Shelton v. Tucker, 364 U.S. 479, 486 n. 7, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), Bates v. Little Rock, 361 U.S. 516, 520-522, 80 S.Ct. 412, 4 L.Ed.2d 430 (1960), NAACP v. Alabama, 357 U.S. 449, 462, 78 S.Ct. 1163 (1958), it was willing to state in Communist Party that "the public opprobrium and obloquy which may attach to an individual listed with the Attorney General as a member of a Communist-action organization is no less considerable than that * * * in N.A.A.C.P. and Bates." 367 U.S. at 102, 81 S.Ct. at 1413. And in American Communications Ass'n v. Douds, 339 U.S. 382, 402, 70 S.Ct. 674, 686, 94 L.Ed. 925 (1950), the Court noted:
 Under some circumstances, indirect "discouragements" undoubtedly have the same coercive effect * * * as imprisonment * * *. A requirement that adherents of particular religious faiths or political parties wear identifying arm-bands, for example, is obviously of this nature.
 
 
 [21]
 "Against the impediments which particular governmental regulation causes to entire freedom of individual action, there must be weighed the value to the public of the ends which the regulation may achieve. 367 U.S. at 91, 81 S.Ct. at 1407
 
 
 [22]
 This difference was used inCommunist Party to distinguish Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). See 367 U.S. at 92-93, 81 S.Ct. 1357.
 
 
 [23]
 We are not dealing here with a legislative investigation the primary purpose of which is to inform Congress with respect to matters properly within its concern. In such cases, some disclosure to the public may be justified as a necessary incident of disclosure to CongressCf. Watkins v. United States, 354 U.S. 178, 187, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1967); United States v. Rumely, 345 U.S. 41, 56-58, 73 S.Ct. 543, 97 L.Ed. 770 (1953) (concurring opinion).
 
 
 [24]
 In theCommunist Party case, the Court sustained the disclosure provisions of § 7 of the original Act because
 the mask of anonymity which [the] organization's members wear serves * * * [to enable] them to cover over a foreign-directed conspiracy, infiltrate into other groups, and enlist the support of persons who would not, if the truth were revealed, lend their support.
 367 U.S. at 102-103, 81 S.Ct. at 1414. In other words, the government's interest in disclosure was considered to be its interest in disclosure of the names of guilty members of the Party, i. e., those who shared the purposes found by the Court not to be constitutionally protected. But, as pointed out above, there was in that case no practicable way of distinguishing between innocent and guilty members, and a refusal to consider the public interest in disclosure of the guilty members would have meant that the interest could not have been protected at all. See 367 U.S. at 88-89, 81 S.Ct. 1357.