**INTERNATIONAL UNION, etc., et al., Plaintiffs,**

v.

**Stacey A. GARNER, etc., et al., Defendants.**

No. 1–83–0088.

United States District Court, M.D. Tennessee, Columbia Division.

May 2, 1984.

On Motion to Alter or Amend or Reconsider July 9, 1984.

B.J. Wade, Gerber, Gerber & Agee, Memphis, Tenn., and Jordan Rossen, Gen. Counsel, Leonard Page, Assoc. Gen. Counsel, Detroit, Mich., for plaintiffs.

Susan Emery McGannon, Donelson, Stokes, Bartholomew, Nashville, Tenn., Jack B. Henry, Pulaski, Tenn., for Garner, Newton, Barnes, and Roberts.

Arnold E. Perl, Young & Perl, P.C., Memphis, Tenn., Aubrey B. Harwell, Jr., Philip N. Elbert, Neal & Harwell, Nashville, Tenn., Jon S. Kubiak, Chicago, Ill., for Maremont Corp.

Cornelia A. Clark, Farris, Warfield & Kanaday, Nashville, Tenn., for City of Pulaski, Tenn.

## MEMORANDUM

WISEMAN, District Judge.

This case, involving a highly contentious conflict over a union organizing campaign, presents important questions regarding the scope of discovery and the rights of participants in discovery to comment on matters involved in litigation. On December 20, 1983, this Court entered a protective order suspending discovery for a period of ninety days because the Court found that discovery processes were being used primarily

to develop information for an unfair labor practice proceeding before the NLRB and to conduct a public relations battle rather than to develop information for the case before this Court. Defendant Maremont Corporation moved for an extension on the suspension of discovery until May 2, 1984, when the hearing before the NLRB will be concluded. Plaintiff International Union has not objected to the stay. Accordingly, the stay of discovery shall be extended until after May 2, 1984.

The parties have contested two other matters of discovery: plaintiffs have objected to defendant Maremont's motion for a protective order when discovery recommences and to Maremont's motion to compel production of documents. For the reasons discussed below, the Court will deny both of Maremont's motions.

Plaintiffs bring this cause of action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331(a) alleging violations of their first, fifth, and fourteenth amendment rights. Plaintiffs are the International Union, United Automobile Aerospace and Agricultural Implement Workers of America [UAW] and individual union organizers and employees. They allege that the defendants, Maremont Corporation, the Mayor of Pulaski, Tennessee, and officials in the Pulaski Police Department engaged in a conspiracy to deny plaintiffs and employees of Maremont their first amendment right to freedom of association by engaging in surveillance of union organizing activity and compiling lists of those attending organizational meetings. On September 7, 1983, plaintiffs brought this action and the Court entered a temporary restraining order. On September 19, 1983, the Court entered a preliminary injunction ordering defendants enjoined from "[e]ngaging in surveillance of plaintiffs or other employees of the defendant Maremont Corporation at or near union meetings" or "[r]ecording license plate numbers and/or identities of persons attending union meeting[s]."

### THE PROTECTIVE ORDER

Defendant Maremont moved for a protective order pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure. The order would place "all written material, including deposition transcripts, pleadings, exhibits, and documents" produced during discovery or at trial "or otherwise generated," under seal and not made part of the public record. The order would also prohibit parties and attorneys from using any information attained through litigation for any purpose other than the present litigation; or to "creat[e] news stories" or "harass, intimidate or embarrass an individual or party." The order would also prohibit parties from transferring or communicating any information contained in documents produced during the trial or preparation for trial "to any person other than for purposes directly related to the trial." Exhibit A to Defendant's Motion for Protective Order.

Plaintiffs have filed objections to the proposed protective order, asserting that there is no "good cause" for the order within the meaning of Rule 26(c). Additionally, plaintiffs have asserted that first amendment considerations protect against imposition of broad protective orders restraining political speech and publication of court records.

■ The portions of the order restraining communication about matters disclosed during the trial cannot withstand review. In *CBS, Inc. v. Young*, 522 F.2d 234 (6th Cir.1975) (per curiam), the Sixth Circuit issued a writ of mandamus ordering the district court to vacate a similar order to the one requested by defendant. The order prevented parties and all others associated with the proceedings, involving wrongful death actions in the Kent State case, from discussing the case with the press or general public. Finding the order to be a prior restraint on freedom of expression, the court held it could be justified only by "a serious and imminent threat to the administration of justice." *Id.* at 239 (quoting *Craig v. Harney*, 331 U.S. 367, 373, 67 S.Ct. 1249, 1253, 91 L.Ed. 1546 (1947)). The court held that "any restrictive order involving a prior restraint upon First Amendment freedoms is presumptively

void and may be upheld only on the basis of a clear showing that an exercise of First Amendment rights will interfere with the rights of the parties to a fair trial." *Id.* at 241.

More recently, the Sixth Circuit reiterated the importance of public trials in *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 (6th Cir.1983). There, in a case involving a challenge to "tar" and nicotine figures for cigarettes, the court vacated a district court order placing all documents produced at trial under seal. Stressing the long history and vital role of public trials in our system of justice, the court held that the first amendment and the common law limit the discretion of trial courts to seal court documents. *Id.* at 1177. Open trials, the court held, provide the community with a basis for court decisions or an informed analysis or critique of the courts, as well as a catharsis and outlet for the community. *Id.* (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571, 100 S.Ct. 2814, 2824, 65 L.Ed.2d 973 (1980)). Additionally, the court stressed that open courts induce members of the public to come forward with evidence, make witnesses less inclined to perjure themselves, and reduce concealment of corruption. *Id.* at 1178–79. The court noted that there are limited exceptions to the "strong presumption in favor of openness" in cases where it is necessary to protect the privacy rights of participants or third parties, trade secrets, national security, or the right to a fair trial, and where necessary to preserve order in the courtroom. *Id.* at 1179. The court held, however, that simply showing that information would harm a company's reputation was insufficient to overcome this presumption. *Id.*

Defendants have not offered any compelling reason for placing trial proceedings under seal or limiting discussion of court proceedings. Defendants have not presented this Court with any public interest sufficient to justify the burden they wish to impose on the public interest in open courts and the interests of participants in free expression. Defendants appear primarily to desire lesser public scrutiny of their actions, an interest that the *Brown & Williamson* court dismissed as insufficient to outweigh the presumption favoring an open judicial system. Other, less intrusive means are available to protect defendants' rights to a fair trial. Under these circumstances, it would be inappropriate to seal court proceedings because defendants have not demonstrated a serious and imminent threat to the administration of justice.

■ Plaintiffs also challenge defendant's motion for a protective order on discovery materials. Rule 26(c) provides that courts may make protective orders "for good cause shown." Courts have held that Rule 26(c) discovery orders implicate first amendment rights, but they have differed on the balance they strike in weighing competing concerns. In *In re Halkin*, 598 F.2d 176 (D.C.Cir.1979), the court struck down a protective order that prohibited parties and counsel from disclosing material or making extra-judicial statements about information produced through discovery in proceedings based on a complaint challenging surveillance of Vietnam war protesters by the Central Intelligence Agency. The court noted that individuals do not waive first amendment rights merely by participating in trials, *id.* at 188–89, and held that any limitation on what trial participants can say about information obtained through litigation implicated the first amendment, *id.* at 190 (citing *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 837–38, 98 S.Ct. 1535, 1540–1541, 56 L.Ed.2d 1 (1978)). The court held that the burdens protective orders impose on first amendment rights may be justified where there are strong state interests in the functioning of the discovery process or in "unfettered expression." *Id.* at 191. To justify a protective order, the court held, the "harm posed by dissemination must be substantial and serious; the restraining order must be narrowly drawn and precise; and there must be no alternative means of protecting the public interest which intrudes less directly on expression." *Id.* (footnotes omitted). The court stressed that a change of venue to a place less exposed to intense publicity may

be an appropriate, less restrictive means of ensuring a fair trial, as would postponement, protective jury instructions, or thorough voir dire. *Id.* at 195 (citing *Nebraska Press Association v. Stewart*, 427 U.S. 539, 563–64, 96 S.Ct. 2791, 2804–2804, 49 L.Ed.2d 683 (1976)).

The First Circuit applied a somewhat more relaxed standard in *In re San Juan Star Co.*, 662 F.2d 108 (1st Cir.1981). There the court upheld a protective order on deposition testimony in a civil rights action involving a highly publicized slaying of suspected terrorists in Puerto Rico. The court held that protective orders on discovery information implicated "significant but limited First Amendment concerns." *Id.* at 114. The court stressed that denial of discovery altogether does not infringe first amendment rights and that compelled disclosure of material, which has not been "filtered" for admissibility under liberal discovery rules, is not "material within the public's right to know." *Id.* at 115. Nevertheless, the court held, communications produced during discovery deserve some first amendment protection. The court therefore adopted a standard for "good cause" that measures the magnitude and likelihood of the threatened harm, the effectiveness of the protective order in preventing the harm, the availability of less restrictive means of protecting fair trial and privacy rights, and the narrowness of any order issued if deemed necessary. *Id.* at 116.

Because the *San Juan Star* court found that the case was the subject of "intense pretrial publicity" which exceeded tolerable limits, the court upheld the protective order to ensure a fair trial. *Id.* at 117. The court stressed that a less restrictive means of protecting the interests, a requirement which must be satisfied in all cases, *id.* at 116, would not be satisfied by a change of venue because publicity would circulate throughout the entire island of Puerto Rico, *id.* at 117. The court also held that the order was appropriately narrow in scope because depositions would be open following the trial and the order applied only to future depositions. *Id.* at 117.

Therefore, the court held that the order provided the only way to ensure a fair trial and that it did not impermissibly burden freedom of speech.

Other courts have examined protective orders on discovery materials under a first amendment analysis. In *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F.Supp. 866 (E.D.Pa.1981), the court addressed the issue in a complex international antitrust case and authorized an order protecting trade secrets from disclosure. Stressing the need for fostering communication between litigants and for an effective discovery process in complex litigation, the court adopted the *San Juan Star* balancing approach. The court stressed, however, that alleged injuries must be set forth with specificity, *id.* at 891 (citations omitted), that protective orders must be narrowly drawn, *id.* at 892, and that restraints on communication must be only incidental to important interests to be justified, *id.* at 911 (citations omitted). Other district courts have echoed these concerns. The party moving for an order bears the burden of demonstrating good cause. *Waelde v. Merck, Sharp & Dohme*, 94 F.R.D. 27, 28 (E.D.Mich.1981); *United States v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421, 425 (W.D.N.Y.1981) (citing *General Dynamics Corp. v. Self Manufacturing Co.*, 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974)); *Reliance Insurance Co. v. Barron's*, 428 F.Supp. 200, 202 (S.D.N.Y.1977) (citations omitted); *Davis v. Romney*, 55 F.R.D. 337, 340 (E.D.Pa.1972). These courts also rejected motions for protective orders that failed to set out specifically the harms they sought to avoid. *Waelde*, 94 F.R.D. at 28 (particularized showing and specific examples required in commercial litigation); *Hooker Chemicals*, 90 F.R.D. at 425 (rejecting conclusory statements that company will be injured by disclosure); *Reliance Insurance*, 428 F.Supp. at 204; *Davis*, 55 F.R.D. at 340, 345 (good cause must be based on testimony and factual data rather than unsupported conclusions). *See also*

*Columbia Broadcasting Systems, Inc. v. U.S. District Court,* 729 F.2d 1174 (9th Cir.1984) (high standard of prejudice required for a protective order on trials or pretrial discovery).

Whether the Court adopts the balancing approach of *San Juan Star* or the "substantial and serious harm" approach of *In re Halkin,* the Court finds that defendant has not carried its burden of establishing good cause for the protective order on discovery materials. The matter of immediate concern to the Court—the use of discovery for the pending NLRB hearings—has been resolved by the suspension of discovery agreed upon by both parties. There has been no showing that plaintiffs have used discovery to develop information unrelated to the case before the Court. If information developed at trial and made part of the public record affects public opinion or fuels unfair labor practice charges, that is not a reason to seal all records in this case. These alleged future injuries are not sufficient for the Court to impose the broad protective order proposed by defendants that would overly burden and restrain communication about this case.

Restraints on communication in this case are not merely incidental to important interests such as the right to a fair trial. Significantly, defendant has not asserted interests in fair trial rights and has focused instead on possible collateral uses of discovery materials after the NLRB proceedings are completed. The magnitude and likelihood of this harm does not outweigh the first amendment interests at play in the discovery process. Moreover, the Court observes that attorneys are officers of the Court with an ethical duty to safeguard rights such as the right to a fair trial. *See In re Halkin,* 598 F.2d at 186. Moreover, that right could be protected by less restrictive means such as a change of venue.

Defendant's concerns are simply not weighty enough to justify the burden it proposes on speech. The cases defendant has cited that deal with complex commercial litigation where parties generally enter into protective agreements do not reach the heart of the issues in this case, where there are no trade secrets or commercial advantages at issue. This issue is controlled by *Halkin, San Juan Star, CBS v. Young,* and *Brown and Williamson,* and these cases do not justify the protective order defendant proposes.

## MOTION TO COMPEL PRODUCTION OF DOCUMENTS

The second issue to be addressed is whether the Court should compel production by plaintiffs of certain documents relating to union organizing activity. Defendant Maremont has moved to compel production of documents pursuant to Rule 30(b)(5) of the Federal Rules of Civil Procedure. Plaintiffs served written objections and filed a memorandum in opposition to this motion. Plaintiffs have objected to Maremont's requests for: (1) records reflecting the names of persons who attended meetings regarding plaintiffs' organizational efforts; (2) Union authorization cards signed by Maremont employees; (3) documents or internal memoranda relating to UAW's policy or plan to unionize the Pulaski plant; and (4) documents or internal memoranda relating to activities in which the defendants are alleged to have engaged. Plaintiffs argue that the documents are privileged or that the chilling effect on first amendment rights that would result from compelled disclosure outweighs whatever interests defendants have asserted in arguing for disclosure.

The Federal Rules have liberal provisions for discovery of any information that may lead to the discovery of admissible evidence. Fed.R.Civ.P.Rule 26(b)(1). Nevertheless, parties may not discover privileged matters. *See id.* Moreover, the Court may restrict discovery to protect a person or party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. Rule 26(c).

The determination whether material is "privileged" and not subject to discovery depends on privileges as defined in the Rules of Evidence. *See United States v. Reynolds,* 345 U.S. 1, 6, 73 S.Ct. 528, 531,

97 L.Ed. 727 (1952). Rule 501 of the Federal Rules of Evidence allows courts to interpret the "principles of the common law" in each case to determine whether a privilege shall apply. Privileges apply where disclosures originate in confidence; where confidentiality is essential to full and satisfactory maintenance of the relation between the parties in a confidential relationship; where the confidential relationship is one that the community feels ought to be fostered; and where the injury arising from discovery would be greater than the benefit gained thereby. 8 J. Wigmore, *Evidence in Trials at Common Law* § 2285 (McNaughton ed. 1961).

■ In the present case, the union authorization cards signed by Maremont employees should be protected from discovery as privileged communications. The employees who signed did so under a promise of confidentiality. Darby Affidavit. It is doubtful that union certification election procedures would be effective if employees who signed authorization cards would be revealed in the course of litigation. Confidentiality is important to the policies of the National Labor Relations Act, which provides generally for secrecy in elections. Finally, the interests Maremont has asserted in discovering the evidence to locate witnesses and determine the effect of the surveillance on employee associational activity are insufficient to outweigh the injury to first amendment interests that would result if this discovery were permitted.

The Supreme Court "has repeatedly recognized that compulsory disclosure of organizational ties can constitute a significant encroachment on freedom of association." *Familias Unidas v. Briscoe*, 619 F.2d 391, 399 (5th Cir.1980) (citing, *e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976); *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539, 544, 83 S.Ct. 889, 892, 9 L.Ed.2d 929 (1963); *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960)). In *Familias Unidas*, the court held unconstitutional a statute that required public disclosure of membership in organizations deemed by a judge to interfere with the operation of public schools. The court held the statute overbroad because members who did not align themselves with the illegal goals of an organization were made subject to public recrimination merely for their affiliation with an organization. The court stressed that compulsory disclosure of association will be upheld only where it is "substantially related" to a legitimate and compelling state interest, 619 F.2d at 399 (citing *Gibson*, 372 U.S. at 546, 83 S.Ct. 889, at 893, 9 L.Ed.2d 929; *NAACP v. Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963)), and only where disclosure is the least restrictive means of achieving a permissible objective, *id.* (citing *Buckley v. Valeo*, 424 U.S. at 68, 96 S.Ct. 612, at 658, 46 L.Ed.2d 659; *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 307, 84 S.Ct. 1302, 1313, 12 L.Ed.2d 325 (1964); *Shelton*, 364 U.S. at 488, 81 S.Ct. 247, at 252, 5 L.Ed.2d 231; *Boorda v. Subversive Activities Control Board*, 421 F.2d 1142 (D.C.Cir.1969), *cert. denied*, 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970)).

In *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court reversed an order requiring the NAACP to produce membership lists in pending litigation. Stressing the "vital relationship between freedom to associate and privacy in one's associations," *id.* at 462, 78 S.Ct. 1163, at 1172, 2 L.Ed.2d 1488, the Court held that the substantial burden on association, in the form of public recrimination which would result from disclosure, was not outweighed by a sufficient state interest in adjudicating the controversy. Disclosure, the Court held, had no substantial bearing on the central issues: whether the NAACP was complying with the state's corporation registration statute and whether the NAACP should be ousted for noncompliance. *Id.* at 464, 78 S.Ct. 1163, at 1172, 2 L.Ed.2d 1488.

An analogous area in measuring protection from disclosure of information implicating first amendment rights is the quali-

fied privilege available for news reporters. *See generally* Note, *Free Press, Privacy, and Privilege: Protection of Researcher— Subject Communications,* 17 Ga.L.Rev. 1009 (1983). The general approach to this privilege is expressed in Justice Powell's concurrence in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Justice Powell, who cast the deciding vote in *Branzburg,* adopted a balancing approach to determine whether to apply a privilege entitling journalists to refuse to disclose confidential sources. Balancing the constitutional interest in a free press and the societal interest in eliciting relevant testimony on a case-by-case basis, Justice Powell held, "accords with the tried and traditional way of adjudicating such questions." *Id.* at 710, 92 S.Ct. 2646, at 2671, 33 L.Ed.2d 626. *See also In re Petroleum Products Antitrust Litigation,* 680 F.2d 5, 7 (2d Cir.) (per curiam), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982) (disclosure of journalists sources "may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources.") (citations omitted); *Zerilli v. Smith,* 656 F.2d 705, 712–14 (D.C.Cir.1981) (litigant's interest in disclosure should ordinarily yield to journalist's privilege unless information sought is central to the case or reporter himself is sued and would otherwise be shielded from liability, and then only where litigant shows that "he has exhausted every reasonable alternative source of information").

The constitutional interest in this case, preservation of freedom of association, is a weighty one. The depositions show that members of the Pulaski Police Department, at the behest of the mayor, conducted surveillance of plaintiff's organizational activities on at least four occasions. Public officials discovered and recorded license numbers and names of owners of cars outside buildings where employees were assembled, and distributed the names to Maremont Corporation and Mayor Garner. Although Maremont thus possesses already the names of persons attending the organizational meetings in question, it seeks to discover the names of employees who signed authorization cards and who attended any organizational meetings. Maremont argues that it needs this information because it may show the degree of intrusiveness of the activities, the percentage of signers subject to surveillance, and the overall chilling effect of defendants' activities. Memorandum in Support of Motion to Compel at 7–8, 11.

In *United States v. Bryan,* 339 U.S. 323, 332, 70 S.Ct. 724, 731, 94 L.Ed. 884 (1950), the Supreme Court held, "Every exemption from testifying or producing records ... presupposes a very real interest to be protected." The very real interest in the present case is prevention of discovery that would further chill and infringe rights to association and is geared substantially to inhibiting the organizational efforts of plaintiffs. Strong public policy interests in privacy and freedom of association are reflected in the cases that hold authorization cards exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552. *See, e.g., N.L.R.B. v. Robbins Tire and Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *N.L.R.B. v. Martins Ferry Hospital Association,* 649 F.2d 445 (6th Cir.1981); *Howard Johnson Co. v. N.L.R.B.,* 618 F.2d 1 (6th Cir.1980); *Madeira Nursing Center, Inc. v. N.L.R.B.,* 615 F.2d 728 (6th Cir.1980).

In *Robbins Tire,* the Supreme Court held that unfair labor practice complaints and witness statements in pending unfair labor practice proceedings are exempt from mandatory disclosure "at least until completion of the Board's hearing." 437 U.S. at 236, 98 S.Ct. 2311, at 2324, 57 L.Ed.2d 159. The Court held the records were investigatory and were exempt from disclosure requirements because disclosure would interfere with enforcement proceedings under 5 U.S.C. § 552(b)(7)(A). In *Martins Ferry,* the Sixth Circuit held that authorization cards were exempt from discovery of the NLRB, relying on the same exception to

the Freedom of Information Act. 649 F.2d at 449.

In *Madeira Nursing Center*, the Sixth Circuit relied instead on Exemption 6 for information "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 615 F.2d at 730 (citing 5 U.S.C. § 552b(c)(6)). The court held that an employer may not obtain authorization cards from the NLRB, stressing that "an employee may be amply justified in wishing to protect his pro-union declaration from employer scrutiny." *Id.* at 731. The court quoted at length from *Pacific Molasses Co. v. N.L.R.B. Regional Office #15*, 577 F.2d 1172, 1182 (5th Cir.1978):

> We would be naive to disregard the abuse which could potentially occur if employers and other employees were armed with this information. The inevitable result of the availability of this information would be to chill the right of employees to express their favorable union sentiments. Such a chilling effect would undermine the rights guaranteed by the National Labor Relations Act, and, for all intents and purposes, would make meaningless these provisions ... which guarantee secrecy in union elections.

The *Madeira* court stressed that employees should be protected from disclosure particularly where the union is defeated in an election and "may be unable to give the support anticipated by its adherents." 615 F.2d at 731.

Here the plaintiffs and the employees they seek to protect are in a similarly vulnerable position for reprisals. Their rights would not be satisfactorally protected by remedial or protective orders after names on authorization cards are revealed. Defendants, in their lengthy history of activities that may infringe first amendment activity, have already demonstrated a desire to gain access to similar information for purposes collateral to this litigation. Employees who signed authorization cards under a promise of confidentiality would understandably feel vulnerable should their names be disclosed and would be further

inhibited from exercising their rights to freedom of association. Similarly, disclosure of the other documents that Maremont has sought to discover would further the purposes of the very activity this Court has enjoined; Maremont would have access to information on organizational activity that it has apparently attempted to obtain surreptitiously. It is significant that it is defendant Maremont that is seeking this information rather than the other defendants.

Defendant has not demonstrated that the disclosures it seeks are substantially related to a legitimate and compelling interest. *See Familias Unidas*, 619 F.2d at 399. Nor is the information necessary or critical to the case or highly material or relevant. *See In re Petroleum Products*, 680 F.2d at 7. Maremont already has acquired the names of individuals who attended organizing meetings. It could effectively locate witnesses on the extent of damages from among these persons. Moreover, because employees signed authorization cards at many different locations, obtaining the names on these cards would not lead to crucial witnesses to testify regarding the events at meetings. The intrusive discovery defendant proposes is not effective enough to justify. It would primarily affect individuals who are not parties to this litigation and who have a demonstrated need for privacy in their associations.

The information defendant seeks is not directly related to the central issue of liability, but merely to the extent of liability. Defendants may still present proof on this issue by deposing prospective witnesses and learning the names of others who were present. Defendants' interest would be adequately served by an alternative proposed by plaintiffs: to assess damages, defendant may ask only for the number of authorization cards, the date on which they were signed, and may inquire only about those cards that were signed prior to the Court's entry of a temporary restraining order. The collateral purposes of defendants' requests infringe constitutional rights too greatly to be justified by the interest de-

fendant asserts in proving the extent of damages. Accordingly, defendant Maremont's motion to compel production of documents is denied.

### On Motion to Alter or Amend or Reconsider

This matter is before the Court on motion by defendant Maremont to alter or amend or to reconsider its Order of May 2, 1984, denying Maremont a protective order on discovery materials and denying Maremont's motion to compel production of documents. Defendant has submitted two memoranda in support of its motion and has vigorously argued its position. Defendant's primary argument is that the recent decision of the Supreme Court in *Seattle Times Co. v. Rhinehart*, — U.S. —, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), which subjects protective orders on discovery materials to significantly less scrutiny than this Court had demanded, requires that the Court vacate its judgment on both issues. For the following reasons, the Court finds that *Seattle Times* does not compel this result and denies the motion to reconsider.

*Seattle Times* did not force a trial court to enter a protective order, it upheld the trial court's discretion to issue one. The Court stressed that Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate: "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." — U.S. at —, 104 S.Ct. at 2209 (footnote omitted). Although the discussion in *Seattle Times* certainly removes much of the authority for the Court's discussion of the first amendment interests at play in pretrial discovery, it does not in any way diminish the Court's discretion *not* to seal pretrial discovery. The Court finds that likelihood of harm from denial of the protective order is insufficient to justify the protective order Maremont seeks.

*Seattle Times* concerned a defamation suit against a newspaper for extensive coverage of the leader of a controversial religious group. A series of articles had portrayed the plaintiff as a bizarre person who had engaged in morally questionable and superstitious activities. The plaintiff alleged the writers and newspaper knew the stories were untrue and calculated to subject him to public ridicule. Defendants sought to discover financial information and lists of donors and members of the group and the court compelled discovery to substantiate claims of diminished membership and financial support. The court entered a protective order on these materials. The Supreme Court upheld the authority of the trial court to enter the order, holding that interests in free expression are limited in disclosed information compelled by discovery and that protective orders may be necessary to prevent abuses and to protect privacy interests. — U.S. at —, 104 S.Ct. at 2207. The Court therefore held that the trial court had not abused it discretion in deciding to issue a protective order on a showing of good cause under Rule 26(c). *Id.* at —, 104 S.Ct. at 2209. The Court reaffirmed that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Id.*

■ This Court, in the exercise of its discretion and for reasons previously discussed in the May 2, 1984, order, finds that defendant Maremont has not established good cause for a protective order on all discovery materials. The Supreme Court's holding that discovery materials are entitled to no heightened first amendment scrutiny simply does not mandate that this Court issue a protective order at every turn.

The *Seattle Times* case likewise has no impact on this Court's holding denying Maremont's motion to compel production of union authorization cards and unionization plans. That case did not undermine the authority of the cases cited in the May 2, 1984, memorandum. Plaintiffs have demonstrated a significant need for protection from compulsory disclosure of organizational ties. Moreover, they have proposed

an adequate alternative that would serve defendant's need to determine the impact of the surveillance on organizational activity: discovery of the number of cards signed at significant times and the dates on which they were signed. Accordingly, defendant Maremont's motion to reconsider is denied.