Wanda **PATTERSON**, et al., Plaintiffs,

v.

**HEARTLAND INDUSTRIAL PARTNERS, LLP, et al., Defendants.**

No. 5:03 CV 1596.

United States District Court, N.D. Ohio, Eastern Division.

Dec. 14, 2004.

Glenn M. Taubman, William L. Messenger, John N, Childs, Colleen C. Curran, Brennan, Manna & Diamond, LLC, Akron, OH, for Plaintiffs.

Jeffrey B. Demain, Stephen P. Berzon, Altshuler, Berzon, Nussbaum, Rubin & Demain, San Francisco, CA, for USWA.

James M. Stone, Jeffrey B. Keiper, McDonald, Hopkins, Co., L.P.A., Cleveland, OH, for Defendants.

*MEMORANDUM OPINION
AND ORDER*

DOWD, District Judge.

## I. Introduction

The Court referred this matter to United States Magistrate Judge James Gallas for pretrial discovery supervision. (Doc. No. 59.) The Magistrate Judge granted plaintiffs' motion to compel production of certain documents and denied defendants' motion for a protective order of certain documents related to Defendant United Steel Workers of America, AFL–CIO's organizing strategy. (Doc. No. 96.) USWA then objected to the Magistrate Judge's ruling asserting a First Amendment associational privilege and a National Labor Relations Act privilege and contending that the denial of a protective order was contrary to law. (Doc. No. 99.) Plaintiffs have opposed this objection (Doc. No. 101), and the parties have filed briefs supplementing their positions (Doc. Nos. 104, 105, 106, 107).

Because the Court finds that the First Amendment associational privilege does not apply in this case, that the NLRA privilege does not exist, and that the Magistrate Judge's limited denial of the requested protective order was not contrary to law or clearly erroneous, the Court OVERRULES Defendants' Objections to the Magistrate Judge's rulings.

## II. Background

This discovery dispute arises out of an unfair labor practice action. Plaintiffs, employees of Defendant Collins & Aikman, allege that Collins & Aikman and Heartland Industrial Partners, LLP ("Company Defendants" collectively) provided Defendant United Steelworkers of America, AFL–CIO a thing of value in violation of § 302 of the Labor Management Relations Act. Plaintiffs contend that a neutrality agreement entered into between USWA and Company Defendants, embodied in a framework agreement and side letter, constitutes a thing of value.

In an effort to further substantiate their claims, Plaintiffs have sought the production of documents related to USWA's organizing strategy and the negotiations between USWA and Company Defendants. USWA asserted that the First Amendment associational privilege and a purported National Labor Relations Act privilege prevented the discovery of these documents. Plaintiffs responded by bringing a motion to compel production of these documents. All of the Defendants also moved for a protective order to prevent Plaintiffs from sharing any of these documents with the public. The Magistrate Judge granted Plaintiffs' Motion to Compel. He also denied Defendants' Motion for a Protective Order, determining that a document-by-document in camera review was necessary prior to preventing the disclosure of the documents. USWA has now objected to these rulings.

## III. Standard of Review

A Magistrate Judge's ruling under Fed. R.Civ.P. 72(a) is not to be set aside unless it is "found to be clearly erroneous or contrary to law." A ruling is clearly erroneous "only when, although there may be some evidence to support the finding the reviewing court, upon review of the entire record, is left with the definite and firm conviction that a mistake has been committed." *United States v. Hurst,* 228 F.3d 751, 756 (6th Cir.2000) (citing *United States v. Latouf,* 132 F.3d 320, 331 (6th Cir.1997)). Thus, a magistrate's determination is provided considerable defer-

ence. *In re Search Warrants Issued August 29, 1994,* 889 F.Supp. 296, 298 (S.D.Ohio 1995).

## IV. Discussion

### A. Associational Privilege

■ The USWA first claims that the documents are not discoverable because they are protected by a First Amendment associational privilege. "[C]ompulsory disclosure of organizational ties can constitute a significant encroachment on freedom of association." *Familias Unidas v. Briscoe,* 619 F.2d 391, 399 (5th Cir.1980), *quoted in Int'l Union v. Garner,* 102 F.R.D. 108, 114 (M.D.Tenn. 1984). This is because of the public recrimination that can result from disclosure of one's associational ties. *See NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), *discussed in Garner,* 102 F.R.D. at 114. Employees who sign union authorization cards or otherwise participate in union organizing activities are one such group vulnerable to reprisals. *See Garner,* 102 F.R.D. at 116. They, therefore, are protected by the First Amendment associational privilege. *Id.*

Here, the USWA asserts that the documents Plaintiffs seek to discover contain the identities of union supporters. The disclosure of these names could potentially result in reprisals against these individuals. The associational privilege, therefore, would prevent disclosure of these documents. Plaintiffs, however, have agreed to allow the names and other information of union supporters to be redacted from any documents produced. (*See* Pls. Supp. Resp., Doc. No. 106, "Plaintiffs have been willing to accept documents with the personal identities of C & A employees who are USWA supporters redacted.") Thus, the identities of individuals who support the union activities would not be revealed. The Court, therefore, finds that the First Amendment associational privilege does not apply to these documents.

### B. NLRA Privilege

■ The Magistrate Judge rejected the USWA's assertion of the purported National Labor Relations Act privilege. The USWA claims that this rejection was contrary to law because the NLRA privilege does exist and should apply in this case. The Court, therefore, must first determine whether the NLRA privilege exists. "[T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." F.R.E. 501. "The starting point in this analysis is the general rule that the public has a right to everyman's evidence." *Nilavar v. Mercy Health Sys.–W. Ohio,* 210 F.R.D. 597 (S.D.Ohio 2002) (quoting *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). "[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). "[W]ith very limited exceptions, [therefore,] federal courts have generally declined to grant requests for new privileges." *Pearson v. Miller,* 211 F.3d 57, 67 (3d Cir.2000).

Here, the USWA contends that the NLRA gives unions a privilege which protects internal union organizing strategy documents. The only federal court case to which the USWA cites in which a court denied a party access to internal union strategy documents is *International Union v. Garner,* 102 F.R.D. 108 (M.D.Tenn.1984). The USWA contends that this shows those documents are privileged. As previously discussed, however, *Garner* involved an assertion of the First Amendment associational privilege. The strategy documents in *Garner* were sought to be protected and production was denied because they contained the identities of union supporting employees. 102 F.R.D. at 116. Thus, *Garner* involved an assertion of the associational privilege, which the Court has already determined does not apply in this case. Defendants' reliance on *Garner,* therefore, is unwarranted.

Defendants also point to *Mallick v. Int'l Bhd. of Electrical Workers,* 749 F.2d 771 (D.C.Cir.1984), as a federal court case where the NLRA privilege is recognized. There, in

examining whether a union member was entitled to view union financial records the court stated that "if the [union] demonstrates that disclosure of this information would be comparable to, for example, ... a union's disclosure of organizing strategy, negotiating plans, or other secrets, then examination should be refused." *Id.* at 785. The union member there, however, was not seeking the information in the course of pretrial discovery. Furthermore, the court made no reference to any privilege; nor did the court cite to any case to support its position. Moreover, the Court there was not determining whether the documents at issue were privileged but rather whether the plaintiff's showing of just cause outweighed the damage to the union. *Id.* It is in making this determination that the court compared the damage caused by disclosure of organizing strategy documents with the potential damage caused by the disclosure at issue.*Id.* Thus, *Mallick,* at most, suggests that disclosure of the documents would be harmful to the union.

Defendants further rely on *Berbiglia, Inc.,* 233 NLRB 1476, 1977 WL 9442 (1977). There, an administrative law judge (ALJ) for the National Labor Relations Board revoked subpoenas the company had issued for union documents in an unfair labor practice dispute. *Id.* at 1495–96. The reason for revoking the subpoenas was "that requiring the Union to open its files to [the company] would be inconsistent with and subversive of the very essence of collective bargaining and the quasi-fiduciary relationship between a union and its members." *Id.* at 1495. However, more recently, in *Taylor Lumber & Treating, Inc.,* 326 NLRB 1298, 1300, 1998 WL 700000 (1998), the ALJ stated that it could find "no substantial authority for the notion that a bargaining party's strategy records enjoy some special, categorical insulation from discovery in an unfair labor practice prosecution where the party's strategy is a relevant subject." The ALJ there, accordingly, denied the petition to revoke trial subpoenas for documents containing intramanagement strategy communications. *Id.*

The Court finds no basis in these opinions for the creation or invocation of a NLRA privilege. The public does has a right to everyman's evidence, and these cases do not provide sufficient justification for this Court to hinder that right. *Mallick* discusses the potential damage in revealing such documents, but entertains no analysis regarding the public's need for that information. *Berbiglia,* while more definitively creating a privilege, is not a federal court opinion. Furthermore, *Taylor Lumber* calls into question the NLRB's belief that a blanket privilege, supposedly recognized in *Berbiglia,* exists.[1] This Court, therefore, cannot conclude that the Magistrate Judge's ruling was contrary to law. Consequently, USWA's objections to the Magistrate Judge's ruling are overruled.

### C. The Magistrate Judge's Protective Order

■ The Magistrate Judge has called for an in camera inspection of the documents in this case to determine whether the documents contain information that ought to remain confidential. Defendants object to this procedure on two grounds: first, they claim that they have provided sufficient evidence of harm that would result from disclosure that the court should issue a blanket protective order, and second, they claim that a document-by-document review is cumbersome and not the procedure authorized by Civ. R. 26(c). Civ. R. 26(c) states that "for good cause shown, the court in which the action is pending ... may make *any order* which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." (emphasis added). District Courts have discretion to issue protective orders, but "that discretion is limited by the careful dictates of Fed.R.Civ.P. 26 and 'is circumscribed by a long-established legal tradition' which values public access to court proceedings." *Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 227 (6th Cir.1996) (quoting *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1177 (6th Cir.1983)). "Broad allegations of harm unsubstantiated by specific examples or ar-

---

1. The Court notes that *Taylor Lumber* does not overrule *Berbiglia.* However, that the ALJ chose not to follow *Berbiglia* is a further indication of the weakness of any *Berbiglia* rule, particularly where the strategy documents are relevant, as they are here.

208

ticulated reasoning do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986); *Lewis v. St. Luke's Hosp. Assoc.,* 132 F.3d 33 (Table), 1997 WL 778410 (6th Cir. Dec.9, 1997).

Here, the Magistrate Judge concluded that a document-by-document in camera review of the contested documents was necessary because the evidence presented to him was insufficient to ascertain the reasonableness of Defendants' claims of future harm. Defendants contend that requiring them to produce the documents without a protective order prohibiting Plaintiffs from distributing the documents to third parties will harm their future negotiations and presents significant potential for abuse. As the Magistrate Judge noted, Defendants have not produced any specific examples of documents that will cause such damage nor have they provided sufficiently articulated reasoning justifying a protective order. Their allegations remain relatively broad regarding the potential for future harm. This Court, therefore, cannot conclude that the Magistrate Judge's determination was clearly erroneous.

Furthermore, the Court does not find that requiring an in camera review of the documents before protecting them from disclosure is either clearly erroneous or contrary to law. Civ. R. 26(c) clearly allows the court to make *"any order* which justice requires." It does not establish a specific type or form of order. The Magistrate Judge's order, therefore, shall remain in force and an in camera inspection of the documents shall occur.

## V. Conclusion

For the foregoing reasons, Defendants' Objections to the Magistrate Judge's Ruling are OVERRULED.

The Court had stayed Magistrate Judge Gallas's requirement that Defendants produce the relevant documents and his scheduled in camera review. (Doc. No. 102.) This stay is lifted. Magistrate Judge Gallas is requested to re-establish a deadline for Defendants to produce the documents and to reschedule the in camera review of documents.

IT IS SO ORDERED.